ALBERT ODELL, Appellant, v. JOSIAH MORIN et al., Respondents.

Specific Performance.—A contract for the sale of land of which the courts will be justified in decreeing a specific performance must be certain and defined, and the testimony offered in support of it must be fully sufficient and ample.

Idem.—The rule that a specific performance will be refused where the contract is vitiated by uncertainty, is applied with more than ordinary stringency against assignees and representatives of the contracting parties.

Appeal from Yamhill County.

This is a suit in equity to enjoin the further prosecution of three several actions of ejectment and to enforce the specific performance of a contract for the sale of land. The complaint alleges that in February, 1855, John Odell, the father of the plaintiff, purchased of Laban Morin a portion of his donation land claim and paid him the sum of six hundred dollars, that being the full purchase-price and value thereof. That the contract of purchase was not in writing, but it was agreed between the parties that the said Morin should, as soon as convenient, execute to John Odell a deed for the land. That Laban Morin failed to execute said deed prior to his death, which occurred in March, 1855. That a patent to the said land was, in 1867, issued to the defendants as the heirs at law of said Laban Morin. That John Odell, in July, 1869, conveyed his right and title in the said premises to the plaintiff. The answer denies the contract of purchase and payment.

The testimony offered by the plaintiff on this point was as follows: McTeer, a son-in-law of John Odell, testified that in March, 1854, Morin and Odell stated the contract in his presence. Odell was to pay $500, and Morin was to deed the land as soon as he got a title. Odell paid the amount by giving two yoke of oxen and some money, perhaps $150. In the following fall Morin said that $500 was not enough for the land, and he wanted another yoke of oxen. Odell gave him another yoke, valued at $200, for which sum Morin gave his note.

W. H. Odell, a son of John Odell, testified that in February or March, 1853, a contract was made between Morin and his father for the sale of the land for the sum of $600, the title to be made when Morin obtained his certificate from the land office. That he delivered two yoke of cattle in payment, valued at $300, and that his father told him the balance of the purchase-money was paid. He was not present when the contract was made, but knew that Morin gave his father a note, which witness wrote, payable at some future time. The note was to run about the length of time required to complete the title to the land, but he did not recollect the length of time. He thought this note was delivered to the widow after the death of Morin. Mrs. Sarah Odell, widow of John Odell, knew nothing except what her late husband told her—that he had bought the land for $600, which he paid before Morin died. In the fall of 1854, or the spring of 1855, her husband took the money out of the house, saying that he was going to pay for the land, and when he returned said he had paid for it. Mrs. C. R. Alderman, a daughter of John Odell, testified that just before Morin died, in the spring of 1855, a message from Morin was brought to her father requesting him to come and settle up their business concerning the land before he died. She had no knowledge of the contract except the statements of her father, and that Morin received the cattle. This is all the testimony of the plaintiff in regard to the contract of sale, if we except certain admissions of Mrs. Darr, widow of Morin, made after his death.

On the part of the defense, Mrs. Darr states the only purchase of the land was made of herself in 1856, after Morin's death, the consideration for which was $400 and the note of Morin for $200.

The court below dismissed the bill.

*Boise & Willis*, for Appellant.

*P. C. Sullivan and E. C. Bradshaw*, for Respondents.

By the Court, MOSHER, J. :

The requisites of a contract for the sale of land, of which the courts will be justified in decreeing a specific performance, are clearly stated by Washington, J., in the case of *Colson* v. *Thompson* (2 Wheat. 336): "The contract which is sought to be specifically executed ought not only to be proved, but the terms of it should be so precise as that neither party could reasonably misunderstand them. If the contract be vague or uncertain, or the evidence to establish it be insufficient, a court of equity will not exercise its extraordinary jurisdiction to enforce it."

In this case the evidence of the contract is of a very unsatisfactory character. For instance, McTeer says the purchase was made in the spring of 1854 and the whole of the purchase-money paid at that time, yet he says Morin claimed more money for the land in the fall, when Odell gave him another yoke of cattle, valued at $200, for which he took his note. W. H. Odell, speaking of the first payment, says his father took Morin's note for $600. From this evidence it is uncertain whether the delivery of the cattle was a positive or conditional payment for the land. This is rendered more uncertain by the testimony that Morin, on his deathbed, sent for Odell to come and settle up the business concerning the land. The Court could not be justified in enforcing a contract the evidence of which is so indefinite and uncertain.

It is urged by the counsel for appellant that the testimony is uncertain by reason of the lapse of time. This may be true, but one who has slept upon his rights for eighteen years is not in a position to ask a court of equity to relax the rules of law in his favor. The rule that a specific performance will be refused where the contract is vitiated by uncertainty, is applied with more than ordinary stringency against assignees and representatives of the contracting parties. (*Kendall* v. *Almy*, 2 Sumn. 178; *Montgomery* v. *Norris*, 1 How., Miss. 499.)

The judgment of the Circuit Court is affirmed.