[Filed March 17, 1885.]

# WAGONBLAST v. WHITNEY ET AL.

EQUITY—PAROL AGREEMENT FOR SALE OF LANDS—SPECIFIC PERFORMANCE OF.— To authorize equity to interfere and enforce specific performance of a parol agreement for the sale of land upon the ground of part performance, it must be clear, certain, definite, just, reasonable, and mutual in all its parts, containing all the elements of a binding obligation, except the written memorandum required by statute.

ID.—PROOF REQUIRED.—To take such a contract out of the statute, the evidence must show the quantity of the land, define its boundaries, and fix the consideration.

ID.—ASSIGNEE.—The rule as to certainty and precision in the terms of the contract is enforced with more stringency against assignees and representatives than between the original parties.

WASCO COUNTY. Plaintiff appeals. Affirmed and bill dismissed.

The facts are stated in the opinion.

*W. L. Hill, F. P. Mays,* and *J. H. Bird,* for Appellant.

The case is not within the Statute of Frauds. (*Malins* v. *Brown,* 4 N. Y. 403; 1 Story Eq. Juris. § 761; Adam Eq. pp. 202–205; *Ramsey* v. *Liston* 25 Ill. 114.) Time was not of the essence of the contract to convey. (*Taylor* v. *Longworth,* 14 Peters, 172; *Hepburn* v. *Auld,* 5 Cranch, 262; Adam Eq. pp. 207, 208; note to *Seton* v. *Slade,* 2 Lead. Cas. Eq. part 2, p. 18; 1 Sugden Vendors, ch. 5, p. 313; 1 Story Eq. §§ 776, 777.)

*L. L. McArthur,* for Respondents.

A party seeking to enforce the specific performance of a parol contract for the exchange of lands, must bring himself within the same conditions as though it was a contract for their sale before he can invoke the aid of a court of equity. (*Purcell* v. *Miner,* 4 Wall. 513.) The contract alleged is vague and uncertain, and the testimony in relation thereto is neither clear nor satisfactory. The general rules applicable to this case are laid down in *Odell* v. *Morin,* 5 Oreg. 98; *Brown* v. *Lord,* 7 Oreg.

302; Waterman Specific Performance, § 152; *Hart* v. *Carroll,* 85 Pa. St. 508.) The rule that a specific performance will be refused where the contract is vitiated by uncertainty is applied with more than ordinary stringency against assignees and representatives of the contracting parties. (*Odell* v. *Morin, supra.*)

LORD, J.—This was a suit to compel the specific performance of a verbal contract to convey lands. For the purpose of showing the nature of the agreement, and the grounds upon which the enforcement of the contract is claimed, the facts alleged are in substance: —

That on the——day of——, 1877 (the exact date plaintiff is not able to state), one J. M. Bird was in the rightful and exclusive possession of the following described lands, in said county of Wasco, to wit, the north half of the northwest quarter and the northeast quarter of the northwest quarter of section 14, in township 1 north, of range 13 east of Willamette meridian, and had the same inclosed with fences; that at the same time the said Jonas Whitney was the owner of a certain farm adjoining the said land on the east and south, and was in possession thereof, and that the most convenient way of travel to and from said farm of said Whitney, and between said farm and the Dalles, was and still is over and across said land of the said J. M. Bird, and the said Whitney, for the convenience of said farm, was desirous of having a right of way over and across said lands of said J. M. Bird, for ingress and egress to and from his said farm; and that he and the said J. M. Bird made and entered into an agreement and contract, by which the said Bird agreed that the said Whitney, and his heirs and assigns, owners of said farm, should have and enjoy the right to pass over and across said lands so possessed by said Bird, and should have such right forever as a right of way appurtenant to said farm; such way to be at and along a line which was agreed to by and between them, and leading from said farm of said Whitney over and across said lands of said Bird to a common highway, or way usually traveled by the public, at the west side of said lands of Bird, outside the inclosure of said Bird; such way

to remain and be inside the inclosure of said J. M. Bird, and be provided by said Bird·with gates or bars for the said Whitney, and his heirs and assigns, to use in passing and repassing, until such time as said Bird, or his heirs or assigns, should pay to said Whitney, his heirs or assigns, the sum of two dollars per acre for the lands hereinafter described, and to be conveyed by said Whitney to said Bird, and then and thereafter said way to be open and unobstructed by gates or bars.

And in consideration thereof, and of the payment of said sum of two dollars per ·acre for said hereinafter described lands, the said Whitney agreed that said Bird should have, immediately after and from said agreement, the exclusive possession and use of the following described lands, being part of his farm, to wit, that part bounded on the northeast side by a fence erected by said Bird in pursuance of said agreement (and which is still standing), along the northeast side of which said Whitney was accustomed to travel to and from said way over the land of said Bird, viz., Three-mile Creek on the south, and by the north and west lines of the said farm of said Whitney on the north and west; said tract to be conveyed being more particularly described by reference to the public surveys as that part of the southeast quarter of the northwest quarter of section fourteen (14), in township one (1) north, of range thirteen (13) east of Willamette meridian, embraced within the following boundary lines: Commencing at a point on the north line of the southeast quarter of the northwest quarter of said section 14, where the fence erected by said J. M. Bird, as aforesaid, intersects the same, said point being thirteen (13) chains west of the northeast corner of the southeast quarter of the northwest quarter of said section, and running thence south thirty-five degrees east (S. 35 deg. E.) along said fence to Three-mile Creek; thence up Three-mile Creek to where it intersects the west line of the said southeast quarter of northwest quarter of section 14; thence north to the northwest corner of said southeast quarter of northwest quarter of section 14; and thence east to the place of beginning — containing seventeen (17) acres.

And in pursuance of said agreement the said J. M. Bird did

from that time, and he and his assigns have ever since, permitted the said Whitney, and his heirs and assigns, to use and enjoy said way in accordance with said agreement, and the said Whitney then accepted and entered into the use and enjoyment thereof, and he and his heirs and assigns, have used and enjoyed the same ever since said agreement, and in pursuance thereof; and that the said Whitney, immediately after said agreement was made, and in pursuance thereof, gave to said Bird, and the said Bird accepted the possession of said tract of land, so to be conveyed to him by said Whitney, and the said Bird and his assigns have ever since remained in the exclusive possession and occupation thereof; that the said J. M. Bird, when he took possession of said land so agreed to be conveyed to him by said Whitney, proceeded to build along the northeast side thereof, and on the line thereof, the fence hereinbefore 'described, which was agreed to be the line of the land to be conveyed to him by said Whitney, and said fence has ever since been maintained and kept up by him and his assigns as a part of their inclosures, and that the said way so agreed to be given or permitted to said Whitney, his heirs and assigns, continues in the same direction as said fence from where it intersects said north line of said southeast quarter of northwest quarter of section 14, along and by the said fence, north about 35 degrees west, to the north line of said lands of J. M. Bird, hereinbefore described, and thence west along said last mentioned line to west boundary line of said lands of Bird, where it connects with said way commonly traveled by the public; . . . . that said Jonas Whitney did not during his lifetime convey said land, so agreed to be conveyed by him, to said J. M. Bird or his assigns; that said contract and agreement has been wholly performed on the part of said J. M. Bird and his assigns, so far as the same related to said right of way over their said lands; . . . . that the plaintiff has removed all gates, bars, and other obstructions out of said way, and opened the same to the unobstructed use and enjoyment of the defendants, and is ready and willing to pay the defendants said agreed sum of two dollars per acre for said land, so agreed to be conveyed whenever a conveyance thereof is made or decreed,

and he brings the same, to wit, thirty-four dollars, into court, subject to the order and decree of the court; that the payment of said sum was, by said agreement, to be made only upon and simultaneously with the conveyance of said lands.

The complaint further alleges that said Jonas Whitney died sometime after said agreement was made, and left a will, whereby his wife, Anna Whitney, and the other defendants herein, became proper parties to this suit; and further sets up the transfer by J. M. Bird of his land to J. H. Bird, and of J. H. Bird to this plaintiff, including the seventeen acres so agreed to be conveyed to J. M. Bird by said Whitney, each grantee receiving the possession thereof; and that plaintiff still holds the sole and exclusive possession thereof; that said transfers were made after said agreement, and sometime before the commencement of this suit; and prays the court to decree a conveyance to plaintiff of said land upon the payment of the said two dollars per acre therefor.

The answer denies substantially all the allegations of the complaint. The testimony was taken by deposition, and the Circuit Court, upon the hearing, dismissed plaintiff's bill, from which action plaintiff appeals to this court.

At common law, by virtue of the Statute of Frauds, a contract for the sale of land, when not in writing, was void, and could not be enforced, although part performed. Being a nullity, there was no contract at law, and as a consequence, no rights or duties could arise out of such verbal engagement which either party could enforce in a court of law. In such case the law leaves the parties without any remedy. But it is an obvious principle of justice that a contract, although not in writing, when fairly entered into and part performed, and the relations of the parties are changed, ought not to be evaded. The hardships and injustice growing out of such cases, and for which the law furnishes no form of redress, equity obviates by the specific enforcement of the contract. It treats the contract, and recognizes in the party the same rights which would have existed if the contract had been written.

The ground of the jurisdiction is equitable fraud. It is based upon the just principle that when acts of part performance have

been done in pursuance of and in reliance on the verbal contract, with the knowledge and consent of the other party, and the relations of the parties are so changed by reason thereof as to prevent a restoration to their former condition, it would be a ·fraud, and encourage bad faith to permit the statute to be interposed as a defense whereby one party would reap the benefit of the acts of part performance, and the other be left without any remedy, and liable for damages as a trespasser. (3 Pomeroy Eq. Juris. § 1409, n.) Equity will not permit a party to retain an advantage thus gained upon the faith of a verbal agreement, while he repudiates its obligations under cover of a statute. In a word, it will not allow the statute to be used as a cover for fraud and bad faith. ˙But to authorize equity to interfere, and enforce the specific performance of a parol agreement for the sale of land upon the ground of part performance, it must contain all the elements of a binding obligation, and necessary to the enforcement of any contract, except the written memorandum required by the statute. Such a contract, to be specifically executed, must be clear, certain, definite, just, reasonable, and mutual in all its parts, and if it be wanting in any of these essentials it cannot be enforced. Nor is it sufficient that a specific contract be alleged, but it must be clearly and satisfactorily proved in order to take it out of the statute by part performance.

In *Hart* v. *Carroll*, 85 Pa. St. 510, Woodward, J., in delivering the opinion of the court, said :—

" In order to take a parol contract for the sale of lands out of the operation of the Statute of Frauds, its terms must be shown by full, complete, satisfactory, and indubitable proof. The evidence must define the boundaries, and indicate the quantity of the lands. It must fix the amount of the consideration. It must establish the fact that possession was taken in pursuance of the contract, and at or˙ immediately after the time it was made; the fact that the change of possession was notorious, and the fact that it has been exclusive, continuous, and maintained. And it must show performance, or part performance, by the vendee, which could not be compensated in damages, and such as would make rescission inequitable and unjust."

In *Sutton* v. *Myrick*, 39 Ark. 429, the court say:—

"It is now a well-established rule that when parties so far disregard the Statute of Frauds as to enter into parol contracts in violation of its letter, trusting to equity to protect and enforce their contracts in order to prevent ˙fraud, where they are partially performed, they must see to it that their contracts are clearly and conclusively proven; that they have been partially performed; and that the acts claimed to be in part performance are referable to the contract alone, and˙were done under and in consequence of it; otherwise equity must deny relief."

Nor will the specific performance of a parol contract be granted, unless it be proved in the clearest manner and substantially the same contract as set out in the bill. (*Brown* v. *Brown*, 47 Mich. 384.) These are salutary but stringent rules, in the observance of which the interests of society and the public welfare are involved. A party is presumed to know the requirements of the law, and that a contract for the sale of land must be in writing. When he asks a court of equity to interfere, and save him from the consequences of his disregard of the law, the burden of proof is rightfully thrown upon him to show a case outside of the operation of the statute. The court will not interfere to protect his rights, and lend its aid to the enforcement of a contract depending upon parol evidence and part performance, unless he proves the existence of the contact, its terms, and the acts of part performance by clear, satisfactory, and indubitable proof. (*Brown* v. *Lord*, 7 Oreg. 306; *Odell* v. *Morin*, 5 Oreg. 98; *Wright* v.˙*Pucket*, 22 Gratt. 370; *Parkhurst* v. *Van Cortlandt*, 1 Johns. Ch. 278; *Semmes* v *Worthington*, 38 Md. 298; *Horn* v. *Ludington*, 32 Wis. 73; Wat. Spec. Perf. Cont. § 265, notes.)

It only remains to apply these well-settled principles of equity jurisprudence to the case before us. The plaintiff claims to be the assignee of Bird, one of the original contracting parties, and the defendants are the heirs of Whitney, with whom the contract is alleged to have been made. In substance, as alleged, it was that Whitney agreed to let Bird have the land in controversy, and in consideration therefor Bird agreed to pay Whitney

two dollars per acre, and in addition thereto gave him a right of way over his land. One of the witnesses who heard the agreement, testifying, says:—

"Well, I heard all the conversation there was in the agreement. Mr. Bird wanted this piece of land, and he said to Mr. Whitney that he would like to buy it. Mr. Whitney replied that he would let him have the land for just what he could get land for on the other side of the creek, provided he would give him a right of way to the county road. He said that he wanted an open lane out; that he didn't want to be bottled up with a gate or bars. Mr. Bird agreed to give him the right of way that he asked for. Mr. Whitney asked me to stake out where Mr. Bird could build the fence."

The evidence indicates that Bird went into possession of the land in controversy and grew several crops upon it without complying, in any respect, with his part of the agreement. When asked, quite a long while after, why he did not make the lane out, his answer was: "I am pretty slow, but I will come around right after awhile." He never did "come around right" while he remained in possession of the land, nor the plaintiff, to whom we shall presently advert, until shortly before this bill was filed.

The testimony shows that the right of way to be granted to Whitney by Bird was to be an unobstructed right of way over Bird's land. He wanted an "open lane," "didn't want to be bottled up with gates or bars." One of the strong inducements moving him to make this agreement was the open lane for his convenience, and to connect his farm with a public road. The evidence shows that neither Whitney nor his devisees were ever granted or allowed such unobstructed right of way, and that no attempt was made by Bird nor the plaintiff to comply with the terms of this contract until a short while before the commencement of the present suit. When the plaintiff went into the possession of the land, he was notified that "if he farmed this land he would have to pay rent; and he agreed that he was to give a third of the crop for the use of it." This does not seem to indicate that he understood that he had any rights in the

premises, or that he relied upon the alleged agreement. But waiving this, how does the case thus far stand?

Here is the plaintiff, and those to whose rights he succeeds, claiming to be in the enjoyment and possession of the land in controversy since the making of the alleged parol agreement, cultivating and deriving a profit from it, and without doing anything to enhance its value, or making any valuable or permanent improvements, coming into a court of equity and invoking its aid to enforce such contract without having done or performed, in part or otherwise, those things which were the inducement for the contract, and by which the land in controversy was obtained. This contract was made nearly ten years ago. Bird has passed out of the case, and Whitney has died, and yet during all this time, except the recent liberality of the plaintiff, neither Whitney nor those in his shoes have been permitted to have the unobstructed right of way, which was evidently his principal inducement to make the contract, and perform his part of it at this late day. Under the circumstances disclosed, the case of the plaintiff certainly savors of laches and a want of equity. As to where the right of way was to be located the evidence is not only conflicting, but vague and indefinite. All that is plain is that Whitney was to have an "open lane" over Bird's land, but where is not clearly and satisfactorily answered. If Bird had not been "so slow in coming around right," it might, perhaps, have been identified by possession and user.

Tested by the evidence, there is a lack of certainty as to the description of the land to be conveyed by Whitney to Bird. The assumption has been that he was in possession of the land in controversy, and that this was the identical land which was the subject of the agreement. We have conceded this, but leaving it out of the case, and there is nothing in the evidence to indicate the quantity of the land, nor to fix its boundaries. There is also the same want of certainty in the money part of the consideration, some testifying that the price of the land was to be two dollars per acre, as alleged in the bill, and others that it was to be the price of land on the other side of the creek,

but where on the other side of the creek, and the price, is left to conjecture. The weight and preponderance of the evidence is undoubtedly against the allegations of the bill, and this the plaintiff confirms by his testimomy, upon reflection, when recalled.

In all this there is a lack of that certainty and precision which characterizes written contracts, and which is the special requirement of parol agreements to be specifically executed. To take a parol contract for the sale of land out of the statute, the evidence must show the quantity of the land, define its boundaries, and fix the consideration. The certainty required has reference both to the description and the estate to be conveyed. (*Mathews* v. *Jarrett,* 20 W. Va. 415; *Hart* v. *Carroll, supra;* Wat. Spec. Perf. § 152.) And the rule as to the requirement of certainty and precision in all the terms of the contract is enforced with more stringency, as in this case, against assignees and representatives of the contracting parties. In *Odell* v. *Morin,* 5 Oreg. 96, the court say : —

"The rule that a specific performance will be refused, where the contract is vitiated by uncertainty, is applied with more than ordinary stringency against assignees and representatives of the contracting parties."

It is insisted that the title of the plaintiff is left in doubt by the evidence, and that this fact alone ought to be sufficient to defeat the claim of the plaintiff, on the ground that the defendants are not obliged to accept a doubtful title to the right of way. But it is not necessary for us to examine or determine this aspect of the question. We are of the opinion that the court below did not err in dismissing the bill, and the decree must be affirmed.