Argued 19 February ; decided 9 March, 1903.

## KNIGHT *v.* ALEXANDER.

[71 Pac. 657.]

SPECIFIC PERFORMANCE—INDEFINITE CONTRACT—PAROL EVIDENCE.

Before a contract to convey land can be specifically enforced, whether the contract be oral or written, it must be certain as to the land referred to without the aid of other testimony to identify it. This case well illustrates the rule : A client agreed orally with his attorney to give him "100 acres off the west end of" a certain undescribed tract of several hundred acres of swamp land if he should secure the title from the state for the client. The attorney obtained title to part of it. *Held,* that parol evidence was not competent to identify any particular hundred acres as the particular tract meant, and that the contract was too indefinite as stated to be enforceable.

From Marion: REUBEN P. BOISE, Judge.

Suit by Portia and Sylvia Knight against Wana Alexander (formerly Wana Miller) and husband, and David Rafferty, as administrator of the estate of William P. Miller, deceased, for the specific performance of a contract to convey real estate. The complaint alleges, in brief, that, in 1884 William P. Miller, the defendant's grantor, and N. B. Knight, the plaintiff's assignor, entered into a mutual agreement, wherein and whereby Miller employed Knight to render and perform certain professional services for him, of the reasonable value of $500, consisting in part of securing a title for Miller to some 524.87 acres of swamp land in Marion County, in consideration of which Miller agreed to convey to Knight, by warranty deed, as compensation for such services, 100 acres thereof, particularly described in the complaint; that Knight duly performed the terms of his contract, and on August 22, 1890, the title to the land was perfected and established in Miller, who thereafter attempted to perform the contract on his part by conveying to Knight the 100 acres referred to, but, owing to inadvertence and mistake, the deed included other lands, not owned by him, on account of which it was returned, but never corrected; that thereafter Miller conveyed the land in controversy to the defendants, and Knight assigned and transferred all his interest under the contract to the plaintiffs. The answer denies the contract set out in the complaint, or that Miller agreed or

undertook to convey to Knight the particular 100 acres described therein. The plaintiffs had a decree in the court below, and the defendants appeal.                    REVERSED.

For appellants there was a brief over the names of *W. H. Holmes* and *Webster Holmes,* with an oral argument by *Mr. William H. Holmes.*

For respondents there was a brief and an oral argument by *Mr. R. J. Fleming.*

MR. JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

The contract sought to be enforced in this suit rests entirely in parol. But, conceding that Knight performed the terms thereof on his part, and that such performance was sufficient to take it out of the statute of frauds, we are of the opinion that the decree must be reversed, because the contract was indefinite and uncertain as to the land to be conveyed. The complaint alleges that Miller agreed to convey to Knight certain described real estate, but the evidence does not sustain the allegation. From the testimony it appears that at the time of making the contract Miller was interested in and endeavoring to obtain title from the state to about 800 acres of swamp land in what is known as the "Lake Labish District," for which certificates had been issued by the state to his brother in 1872. The land consists of a narrow strip along Lake Labish, two or three miles in length, with irregular boundaries, following the contour of the lake, and at the western end is divided into two parts. Of the land described in the swamp-land certificates, 493.65 acres were conveyed by the state to Miller on July 1, 1891, but, so far as the record discloses, the remainder, including 175 or 200 acres west of that so conveyed, was never deeded to him. Knight was the only person living at the time of the trial who was present when the contract between himself and Miller now sought to be enforced was made, and the only witness who testified in relation thereto. Being asked to state the terms thereof, he said: "Yes; I will state the contract to

the court, because the judge of the court was the judge at that time. It was in 1882, I think, or 1884—1882—we tried the case of Wattier against W. P. Miller. * * It was a long case, and he beat us down here in the circuit court. * * Now, Bill Miller and John F. Miller came up to my office, right across from the bank there, and he paid me for my services down here in the circuit court. I charged him $150, and he paid me. * * 'Now,' he says, 'I want to enter into another contract. I don't want to be paying out money in this way. I want to give you a portion of the land [swamp land] for your services.' That is what he told me in the presence of General John F. Miller. He says, 'Here, I will give you 100 acres off of the west end of the land, when you get the title to it.' Well, I got the title to it. Now, I got the title to that land there. I got it through my legal services, and my influence with these—what do you call these land agents down here? I went out with them several times, and we got title to that land. But we didn't get title to all of it—all that General Miller and Bill Miller claimed; but we got title to all of the land that he was entitled to that belonged to him under the government of the United States—all of it. That was in—well, in 1882 and 1884. Now, Bill Miller promised to give me 100 acres of that land, after I had that contract with him in my office. He promised to give me 100 acres of that land off of the west end of it.'' At other places in his testimony the witness said, ''He promised to give me 100 acres of that land off of the west end of it,'' and that ''he said he would give me 100 acres of this land if I got the title to it.'' Mrs. John F. Miller, a witness for the plaintiffs, testified that in 1891 William Miller told her that he had agreed with Knight to give him ''100 acres of the Lake Labish property when he had completed certain titles. * * He says: 'I agreed to give him 100 acres. I don't think his services is worth 100 acres, but I agreed to give it to him, and I am going to do it.' '' This is all the testimony in the record as to the terms or conditions of the contract, so far as the particular property to be conveyed by Miller to Knight is concerned, and it is clearly insuffi-

cient to justify the court in compelling a specific performance thereof.

Before a court can decree the specific performance of a contract to convey real estate, whether in writing or parol, such contract must be certain in its terms, both as to the description of the property and the estate to be conveyed; and, unless the land is so described therein that it can be identified, specific performance will be denied: Browne, Stat. Frauds (4 ed.), 385; *Whiteaker* v. *Vanschoiack,* 5 Or. 113; *Brown* v. *Lord,* 7 Or. 302, 311; *Wagonblast* v. *Whitney,* 12 Or. 83 (6 Pac. 399); *Ferguson* v. *Blackwell,* 8 Okla. 489 (58 Pac. 647); *Preston* v. *Preston,* 95 U. S. 200 (24 L. ed. 494). Courts do not permit parol evidence to be given to describe the property intended to be included in the contract, and then apply such description to the terms thereof. Thus, an agreement to exchange woollen mills in Franklin, Indiana, for 640 acres of land in Anderson County, Kansas, was held to be indefinite and uncertain as to the property in Kansas, although the plaintiff owned but one tract of land in that state (*Baldwin* v. *Kerlin,* 46 Ind. 426); and, again, a tract described as "his one hundred acres of land" is indefinite and uncertain, and cannot be aided by parol (*Breaid* v. *Munger,* 88 N. C. 297). Nor is an agreement to "sell two acres of ground * * at the point he [the purchaser] may select" sufficient (*Carr* v. *Passaic L. I. & Bldg. Co.* 19 N. J. Eq. 424); nor will a court enforce the specific performance of a contract to convey "the one hundred and twenty acres of land in Shannon County, Missouri" (*Miller* v. *Campbell,* 52 Ind. 125); nor "five acres, lot 3, section 23, town. 28, range 23" (*Nippolt* v. *Kammon,* 39 Minn. 372, 40 N. W. 266). Numerous other cases of similar import are referred to in 22 Am. & Eng. Enc. Law, 963. from all of which it appears that, to entitle the vendee to a decree for the specific performance of a contract relating to real estate, the land involved must be described therein with such accuracy and clearness that it can be identified and its boundaries determined beyond the possibility of any future controversy. Tested by this rule, the contract in this case is clearly insufficient. According to

the evidence, the agreement was to convey 100 acres off of the west end of ''the land,'' without any description of the particular 100 acres, or specification whether it should come out of the land to which Miller would ultimately obtain title from the state, or out of that included in the swamp-land certificates which he then held. Miller, no doubt, promised to convey to Knight 100 acres of the swamp land then in controversy when he obtained title thereto, but, according to the evidence, the contract was too indefinite and uncertain as to the particular tract to be conveyed to enable the court to decree a specific performance thereof. For these reasons, the decree of the court below must be reversed, and the complaint dismissed.

REVERSED.