Argued 17 Oct. decided 27 Nov. 1905; rehearing denied 20 March, 1906.

## SPRAGUE v. JESSUP.

4 L. R. A. (N. S.) 410; 83 Pac. 145; 84 Pac. 802.

SPECIFIC PERFORMANCE—EVIDENCE OF MENTAL CONDITION.

1. The mental condition of a party against whom specific performance of an oral contract to convey is sought is a circumstance to be considered as discrediting the transaction.

EVIDENCE CONSIDERED.

2. The evidence under consideration establishes a parol agreement, as claimed by plaintiffs.

SPECIFIC PERFORMANCE—CERTAINTY OF CONTRACT.

3. A parol contract must be clearly established in its terms and details before a court of equity will undertake to specifically enforce it.

SPECIFIC PERFORMANCE—EFFECT OF DENIAL OF CONTRACT BY DEFENDANT.

4. The mere denial of a contract by one against whom it is sought to be enforced will not prevent its specific performance if the court is satisfied of the terms of the agreement.

STATUTE OF FRAUDS—POSSESSION AS PART PERFORMANCE.

5. Possession of real property by the purchaser under a verbal contract, in connection with payment of part of the purchase price and a tender of the balance, is such a part performance of the contract as to avoid the statute of frauds and support a decree for specific performance.

SPECIFIC PERFORMANCE—QUANTUM OF PROOF OF CONTRACT.

6. Before specific performance of an oral contract will be decreed, the terms thereof must be fully and satisfactorily shown to be certain and unambiguous.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by George D. Sprague and others against Sophronia Jessup to enforce the specific performance of an alleged oral agreement to convey real property. The facts are that the defendant, Mrs. Sophronia Jessup, a widow, was on January 13, 1902, the owner in fee of the east half of lots 7 and 8 in block 7, in the City of Salem, the possession of which she delivered to Mrs. Margaret Fennell, who, on the following day, moved into the house on the land, which she occupied until September 20, 1903, when she died intestate, leaving two sons, two daughters, and three grandsons, the latter being the children of a deceased daughter, all of whom, since the death of their ancestor, have had control of the premises. Mrs. Jessup commenced an action against these heirs and their tenants April 8, 1904, to recover the possession of the real property, and the defendants therein having answered, also as plaintiffs herein, filed a complaint, in the nature of a cross-bill in equity, alleging that the possession of the premises was delivered to Mrs. Fennell pursuant to the terms of a parol contract, whereby Mrs. Jessup stipulated to convey the land to her March 1, 1902, by a good and sufficient deed, in consideration of $5,350, of which sum $200 was paid January 13, 1902, $2,500 was payable March 1st of that year, and the remainder March 1, 1903, the last payment to be secured by a mortgage of the real property, and to bear interest for one year; that Mrs. Fennell, on March 1, 1902, tendered to Mrs. Jessup $2,500, and also offered to execute the mortgage spe-

cified, but the latter refused to make the deed, whereupon the entire sum, including interest, was deposited with the clerk of the circuit court for Marion County as a consideration for the conveyance. The answer denied the material allegations of the complaint, and, the cause being tried, Mrs. Jessup was required to execute to the heirs of Mrs. Fennell a warranty deed to the premises, from which decree she appeals. Affirmed.

For appellant there was a brief and an oral argument by *Mr. L. H. McMahan.*

For respondents there was a brief with oral arguments by *Mr. P. H. D'Arcy* and *Mr. G. G. Bingham.*

Mr. Justice Moore delivered the opinion of the court.

It is admitted that the sum of $200 was received by Mrs. Jessup January 13, 1902, but it is insisted by her counsel that this sum was paid on account of the purchase of certain carpets, furniture, etc., that the possession of the premises was delivered to Mrs. Fennell pursuant to a lease thereof, and that no agreement was entered into for the sale of the real property. These statements are denied by plaintiffs' counsel, who maintain that Mrs. Jessup agreed to sell the premises and certain carpets, furniture, etc., to Mrs. Fennell for an entire consideration of $5,350, receiving in part payment a sum of money evidenced by the following memorandum:

"Salem, Oregon, Jan. 13, 1902.
Received of Mrs. M. Fennell $200, to bind bargain on house.
Mrs. S. Jessup."

and that the possession of the real property was delivered to the purchaser in pursuance of a parol agreement to convey the premises to her.

The testimony shows that for some time prior to January 13, 1902, Mrs. Jessup had been trying to sell her real property, for which she asked $5,500, and that Mrs. Fennell desired to purchase it, but was unable to do so, unless she could sell a farm for which she had been demanding $5,000. The latter was offered $4,500 for her property, and, concluding to accept the bid, she so notified the persons making it, who gave her $50 on account of the purchase, agreeing to pay $2,500 March 1, 1902, and the remainder in a year therefrom. Mrs. Fennell,

having effected a sale of her farm, immediately paid Mrs. Jessup $200, taking the receipt hereinbefore set out, and three days thereafter a contract was prepared, which contained, *inter alia,* the following clause:

"In case the said Fennell shall not be able to sell her farm on or about the 1st day of March, 1902, and make payments herein agreed, then it is understood that the said Fennell has the right to occupy the said real estate from January 15, 1902, to April 15, 1903, at $20 per month, the amount paid on the above to be applied on the furniture purchased."

Mrs. Jessup refused to sign such writing, and so notified Mrs. Fennell, who thereafter made some changes in and improvements upon the house. It is impossible to reconcile the conflicting testimony given by the respective parties. Mrs. Fennell's daughters, who conducted the negotiations for her, each testify that the consideration agreed upon for the purchase of the land in question was $5,350, including the carpets and furniture, and that of this sum they paid for their mother the specified $200. Mrs. Jessup testifies that she leased the premises to Mrs. Fennell for a term of 15 months, and gave possession thereof, receiving $200 for the carpets and furniture which she sold. The testimony further shows that Mrs. Jessup, going to a room by herself, prepared the receipt mentioned, but she says she wrote it at the request of Mrs. Fennell's daughter, who suggested the form thereof. As an excuse for incorporating into the receipt the words "to bind bargain on house," Mrs. Jessup further states that before January 13, 1902, she had never transacted any business, that her husband died about three months prior thereto, after an illness of about a year, and that his sickness and death so injured her health and affected her mind that, with her ignorance of business affairs, she wrote the receipt as requested. The use of the phrase "to bind bargain on house" might relate to a lease of that building, if the $200 had been paid on account thereof, but these words are rendered inapplicable to such a contention by Mrs. Jessup's testimony, which is to the effect that the sum was paid for the carpets and furniture. The wording of the receipt, therefore, corroborates the theory of the plaintiffs that the payment, which it

evidences, was made as a part of the purchase price of the premises.

1. The mental condition of a party, against whom the specific performance of an oral contract to convey land is sought, is an element to be considered in determining the circumstances attending the making of the agreement, to discredit the transaction: Waterman, Spec. Perf. § 159. No testimony was given tending to show to what extent Mrs. Jessup's mind was affected by the care of her husband during his last illness, or to what degree her reason was impaired in consequence of his death, except her general statements as indicated.

2. As tending to show that Mrs. Fennell's understanding in relation to the agreement entered into January 13, 1902, was for the purchase of the property, the testimony discloses that she sold her farm for $500 less than she had been asking for it, in order to raise the money with which to purchase the property in question. It further appears that in September, 1901, she rented, for the term of one year, a new cottage, for which she purchased new carpets, and caused them to be laid on the floors, secured new shades, which she hung at the windows, procured wood for use in the winter, which she caused to be sawed, split and stored away, and that she was living in the cottage with her family when she entered into the contract alleged in the complaint. Mrs. Fennell moved into the Jessup house January 14, 1902, and, as she could use only one of her new carpets therein, she sold the others, and the window shades that she had used in the cottage for a few months, at about one-third of their original cost, and also moved the wood which she had stored for winter's use. It would appear that after January 13, 1902, when the receipt was given, Mrs. Fennell, fearing that the persons who had agreed to purchase her farm might forfeit the small payment made and fail to keep their part of the contract, sought to avoid a suit by Mrs. Jessup for specific performance by treating the agreement to purchase the property in question as a lease thereof, in case Mrs. Fennell could not raise the money, and to consider the payment of $200, made on account of the purchase, as the consideration

for the carpets and furniture.  Mrs. Winnifred O. Barr, a
daughter of Mrs. Fennell, testified, however, that the writing
was suggested by Mrs. Jessup, and the latter does not contra-
dict the statement.  An attorney who prepared the contract
testified that he made it at Mrs. Barr's solicitation, but that the
provision quoted, binding upon Mrs. Jessup, was inserted with-
out prompting from any one.  The memoranda referred to tend
to corroborate Mrs. Jessup's theory, but the modification ad-
verted to, never having been consummated, did not constitute
a contract or change the terms of the agreement of Janu-
ary 13, 1902.

The denial of Mrs. Jessup, and the assertion of Mrs. Fen-
nell's daughters, in respect to the agreement claimed to have
been entered into, require a consideration of the circumstances
attending the transaction and of the testimony, which cor-
roborates or contradicts that of the respective parties.  It seems
improbable that Mrs. Fennell, when she had rented a new cot-
tage which she had completely furnished, and which she was
entitled to occupy for about nine months, should desire to
move into another rented house, when, by so doing, it would
entail such an expense as she incurred.  So, too, it appears in-
explicable that she should agree to sell her farm for $500 less
than she had been demanding for it, when she was under no
obligation to do so, unless the sale was effected to enable her to
purchase Mrs. Jessup's property.  As a circumstance tending
to show the value of Mrs. Fennell's farm, the testimony shows
that in a few months after she disposed of it, without any im-
provement having been made thereon, one of the purchasers
conveyed an undivided one-third interest therein to his co-
tenants for $2,000, thus indicating that the land was worth
more money than she received for it.  The receipt given to evi-
dence the payment of $200, though not conclusive, is an admis-
sion corroborative of the testimony of plaintiffs' witnesses to
the effect that Mrs. Jessup purposely signed it, as therein
stated, "to bind bargain on house."  Gideon Steiner, who had
been engaged in business in Salem many years, appearing as
plaintiffs' witness, testified that, having met Mrs. Jessup on

the street, she informed him that she had sold her property, and, in answer to his inquiry as to whether she had not received about $5,000 for it, replied: "Yes; I got more than that." Fred Hurst, a real estate dealer, as plaintiffs' witness, testified that Mrs. Jessup listed her property with him for sale; that he found a buyer therefor who would pay $5,000, and so notified her by telephone, whereupon she replied that she had secured a purchaser, and hung up the receiver without disclosing who it was. Mrs. Jessup, referring to the statement respecting the sale of the property imputed to her by Steiner, testified that she did not remember of having any such conversation with him, and she does not attempt to deny Hurst's statement that she informed him she had secured a purchaser for the property.

We think a careful examination of all the evidence, viewed in the light of the circumstances attending the transaction, necessarily leads to the conclusion that Mrs. Jessup, on January 13, 1902, agreed to sell to Mrs. Fennell her real property and the carpets and furniture in her house for $5,350, receiving the sum of $200 in part payment thereof, and that the purchaser and her family moved into the house in pursuance of the terms of such agreement, and not in accordance with any lease thereof.

3. The certainty of such a contract must be established by evidence sufficient to satisfy a court of equity of the truth of the allegations of the complaint: *Odell* v. *Morin,* 5 Or. 96; *Plymale* v. *Comstock,* 9 Or. 318.

4. If the denial of a party against whom the specific performance of an oral contract to convey real property is sought to be enforced is sufficient to defeat the right, it is quite probable that this equitable remedy would soon cease to be efficacious. It is possible that the conclusion we have reached may be doing an injustice to Mrs. Jessup, whose statements made under oath in relation to the lease of the premises may be true, and the testimony of plaintiff's witnesses in respect to the alleged sale of the land false; but courts are governed by judges who are only human, and whose deductions, based on issues of fact, depend upon evidence which they deem to be true, and, if they mistake in

their honest convictions in respect to the testimony produced, the fault lies in the method of determining the fact, rather than in the agency employed.

5. It will be remembered that all the permanent changes to the house were made by Mrs. Fennell after she knew that Mrs. Jessup had refused to sign the written memorandum. The part execution of an oral contract to convey land, which is sufficient to take the case out of the statute of frauds, must be some act done upon the premises with the actual or constructive assent of the party against whom the specific performance of the terms of the agreement is sought to be enforced: Waterman, Spec. Perf. § 261; *Wagonblast* v. *Whitney,* 12 Or. 83 (6 Pac. 399). In the case at bar there is nothing but the mere possession of the premises by Mrs. Fennell that can be regarded as having been taken with the knowledge and consent of Mrs. Jessup, and it remains to be seen whether or not that act, in connection with a payment of a part of the purchase price and a tender of the remainder, constitutes such part performance of the oral agreement as to entitle plaintiffs to the equitable relief invoked. The parties to this suit not being related by affinity or consanguinity, no presumption of a license to occupy the premises can be indulged as in cases where the owner of real property permits a person to whom he owes a legal or a moral duty to take possession thereof, in which latter instance, possession, in the absence of valuable improvements to the estate, is not a sufficient part performance: *Barrett* v. *Schleich,* 37 Or. 613 (62 Pac. 792); *Pugh* v. *Spicknall,* 43 Or. 489 (73 Pac. 1020, 74 Pac. 485). A text-writer, in speaking of the acts which amount to part performance of an oral contract to convey real property, says: "Possession alone of land, under a verbal contract, when delivered to the vendee, * * is an act of part performance which takes the case out of the statute of frauds, even without the additional circumstances of the payment of consideration or the making of improvements. This rule is settled by an overwhelming weight of authority in England and in this country, but has been disapproved by the courts of one or two states, which have, until recently, only

possessed a very limited equity jurisdiction": Pomeroy, Spec. Perf. (2 ed.), § 115. The cases cited by the learned author in the notes to this section amply support the legal principle announced.

We think the testimony shows that the parol agreement relied upon is certain and definite in its terms, that the acts proved as part performance were done under, and in pursuance of the identical contract alleged in the complaint, and that a refusal to execute the deed agreed upon· would operate as a fraud upon the plaintiffs, and hence the decree should be affirmed, and it is so ordered.                AFFIRMED.

MR. JUSTICE BEAN, dissenting.

The specific performance of a parol contract for the conveyance of real estate will not be enforced under any circumstances, unless the terms of the contract are shown, by full, complete and satisfactory proof, to have been so precise that neither party could reasonably misunderstand them: *Odell* v. *Morin,* 5 Or. 96; *Wagonblast* v. *Whitney,* 12 Or. 83 (6 Pac. 399); *Knight* v. *Alexander,* 42 Or. 521 (71 Pac. 657). I am not satisfied that this requirement has been met by the testimony in this case.                AFFIRMED.

Decided 20 March, 1906.

ON MOTION FOR REHEARING.

MR. JUSTICE HAILEY delivered the opinion of the court.

This case was argued, submitted and decision rendered while my predecessor was chief justice, and the petition for rehearing was filed after my appointment. I have carefully examined and considered the record of the case, together with the motion and argument filed for rehearing, which is based mainly upon the insufficiency of the evidence to support the decree entered, it being claimed that Mrs. Fennell and Mrs. Jessup did not enter into a contract that was clear, certain and unambiguous in its terms, for the reasons: First, the evidence does not show that Mrs. Fennell entered into any contract with Mrs. Jessup, but rather that Mrs. Fennell's daughters made the contract, if any was made, and stress is laid upon the use of the words "we" and "us" by the daughters, as referring

to themselves and not to their mother. Second, there is no sufficient evidence of authority on the part of the daughters to act as agents for their mother. It is also urged that there is no proof that Mrs. Fennell ever took possession of the property, and that there is no proof of the identity of the property in controversy.

6. Before specific performance of a contract will be decreed it must be shown by full, complete and satisfactory proof to be clear, certain and unambiguous in its terms. This is the unquestioned law to be applied to the facts in this case. The testimony of the defendant shows that she was anxious to sell her home place, the property in controversy, for she had placed it in the hands of a real estate agent for that purpose and had personally called upon Mrs. Fennell and talked with her, and at other times with her daughters, about selling it to her, the price she asked being $5,500. She also knew that Mrs. Fennell "had been trying to sell the farm for a long time," and they talked back and forth and finally she agreed to take $5,300, but they would not give it, and she went home and Mrs. Winkler, one of Mrs. Fennell's daughters, came over and defendant finally said:

"I will split the difference and we will call it $5,150, but that had nothing to do with the furniture. The furniture was a different thing altogether. They said they could not buy unless they sold the farm."

Defendant further testified that she received from Mrs. Barr $200 and gave her a receipt written by defendant acknowledging payment of that sum by Mrs. M. Fennell to bind the bargain on the house; that, on the day following the payment of the $200, Mrs. Fennell and her family moved into the premises and took possession. In answer to a question asked her, if the contract prepared by Mrs. Barr on the 16th and which she refused to sign had been so written that it would have bound them to take the land upon the terms in it, would she have signed it, she said: "I presume I would. I do not know exactly. I presume I would"; her reason for not signing the contract being, as stated in answer to a former question:

"I thought they had all the advantages. They seemed to be

taking advantage of me, my ignorance of business, I suppose they wanted to bind me and not themselves. Not agreeing to take it unless they wanted to, I thought it was a little too one-sided."

Then, again, in answer to the question, "What was the price you were willing to take for the land?" she answered, "I agreed to take $5,150." The testimony on the part of the plaintiffs shows that Mrs. Fennell owned a farm and was desirous of buying the property in controversy if she could sell her farm, and with that end in view she had talked with defendant and had her daughters talk with her, and on the 13th of January, 1902, Mrs. Fennell received from Mr. Goin the sum of of $50 as part payment of the purchase price of $4,500 for her farm, $2,500 of which was to be paid on March 1, 1902, and the remainder one year from that date; and that, relying upon this sale of the farm, she, through her daughters, entered into the contract with the defendant to pay the defendant $5,350 for the property in controversy, including the carpets and furniture, and upon that day did pay $200 as a part of the purchase price, and received the receipt above mentioned, and on the following day removed from the house in which she was then living into the purchased property and there made improvements, and also sold at a loss personal property which she had in her other residence. It is also shown by the testimony of two disinterested witnesses for the plaintiffs that the defendant stated to them that she had sold her property.

That the defendant was dealing with Mrs. Fennell is shown by her own testimony, wherein she testifies to visiting Mrs. Fennell for the purpose of selling her the property, and also by the receipt she gave for the $200, both of which facts show she did not think she was dealing with Mrs. Fennell's daughters. The use of the words "we" and "us" by these daughters evidently referred to their mother, for defendant understood they were acting for their mother, who was to furnish the means to purchase the property by selling her farm. The foregoing testimony, together with that set out in the former opinion, I think proves a contract between defendant and Mrs. Fennell which was clear, certain and unambiguous in its terms,

and such proof is full, complete and satisfactory. The contention on the part of defendant in explanation of the possession of the premises by Mrs. Fennell is that she rented her the premises for a period of 15 months, beginning January 15, 1902, but the proof of this is neither full, complete nor satisfactory, and is contradicted by the two disinterested witnesses heretofore. mentioned. It is urged, however, that there is no proof that Mrs. Fennell ever took possession of the property. This contention is not well founded for the evidence shows that defendant sought to sell to Mrs. Fennell, issued a receipt for $200 to her, and looked to her as the responsible party and principal who was to furnish the money, and these facts, coupled with her subsequent entry thereon, are sufficient proof of her taking possession.

The only remaining question, then, is that of the identity of the property in controversy. This suit is brought by plaintiffs for the specific performance of a contract to convey certain real property discribed in the complaint, and to restrain defendant from prosecuting an action of ejectment against plaintiffs to recover possession of the same premises. The complaint describes the premises and, after setting forth the commencement of the ejectment action by defendant as plaintiff against plaintiffs as defendants to recover possession of the premises described, alleges a contract whereby defendant sold and agreed to convey "said real premises" to one Margaret Fennell, whose heirs are among the plaintiffs. The answer admits the commencement of the ejectment action, "to recover possession of the same lands and premises in question in this suit;" and that defendant "was on the 15th day of January, 1902, and for a long time prior thereto had been the owner in fee simple and in possession of the lands and premises described in the complaint herein." Since there is only one piece of property described in the complaint and defendant admits that her action in ejectment was for the purpose of recovering the possession "of the same lands and premises in question in this suit," I think there can be no question about the identity of the property in controversy, as it is admitted by the answer, and it is

unnecessary for any of the witnesses to describe it with particularity. The only property in controversy between the parties was that described in the complaint, the correct description of which is admitted by the answer, and referred to as the same lands and premises in question in this suit.

I therefore concur in the opinion of Mr. Justice MOORE, heretofore written herein, and the motion for rehearing is denied.                       AFFIRMED. REHEARING DENIED.