Argued May 8, decided May 28, 1912.

## JONES v. HILL.

[124 Pac. 206.]

WITNESSES—TRANSACTIONS WITH A DECEDENT—SELF-SERVING STATEMENTS
    BY DECEASED.
    1. Where, in a suit to foreclose a mortgage, the plaintiff, who was the son of the deceased mortgagee, testified that he could not find the note and mortgage when instructed by his father to get them from the bank where they were kept, another witness was properly permitted to testify that the decedent told her of the loss of the note and said that it was a mystery, and that four or five days before he died he requested her not to repeat what he had told her in regard to the note, as statements of the deceased in regard to the same subject-matter, under Section 732, subd. 2, L. O. L., providing that where an adverse party testifies in his own behalf in an action by or against an executor, or offers evidence of statements by deceased, statements of deceased in his own favor may be admitted.

MORTGAGES—FORECLOSURE—ACTIONS—EVIDENCE.
    2. In an action to foreclose a mortgage, evidence *held* to sustain a finding that the mortgage debt had been paid.

PAYMENT—PRESUMPTIONS—POSSESSION OF NOTES.
    3. Under Section 799, subd. 9, L. O. L., which provides that it will be presumed that an obligation delivered to the debtor has been paid, and subdivision 11, which warrants the presumption that things in the possession of a person are owned by him, possession by the mortgagor of the note secured, together with the abstract of the premises, will raise a strong presumption that the debt had been liquidated.

APPEAL AND ERROR—REVIEW—FINDINGS OF FACT.
    4. Findings of a trial court on conflicting evidence will rarely be disturbed on the weight of evidence.

From Umatilla: GILBERT W. PHELPS, Judge.

Statement by MR. JUSTICE BEAN.

This is a suit by George W. Jones, as executor of the last will and testament of Madison Jones, deceased, against Charles A. Hill and Margaret A. Hill, his wife, and John H. Dozier, to foreclose a mortgage. From a

decree in favor of defendants, plaintiff appeals. The mortgage in question was executed September 10, 1906, by Charles A. Hill and wife to secure the payment of a promissory note of $1,750 and interest, in favor of Madison Jones. The land embraced therein was conveyed to defendant John H. Dozier, who assumed the payment of the mortgage. The complaint is in the usual form, with the additional averment that John H. Dozier surreptitiously and fraudulently obtained, and now wrongfully holds, the note. This is denied by the defendants, who plead full payment of the note in September, 1910, which plea is put in issue by the reply. AFFIRMED.

For appellant there was a brief over the names of *Messrs. Peterson & Wilson,* with an oral argument by *Mr. Will M. Peterson.*

For respondents there was a brief over the names of *Messrs. Carter & Smythe* and *Messrs. Lowell & Winter,* with oral arguments by *Mr. Charles H. Carter* and *Mr. Stephen A. Lowell.*

MR. JUSTICE BEAN delivered the opinion of the court.

The question presented in this case is one of fact. As stated, Madison Jones died on the 16th day of December, 1910, leaving a will in which plaintiff, G. W. Jones, was named as executor. For a long time Mr. Jones had been a respected citizen of Pendleton, engaged in loaning money. At the time of the transaction in dispute, he was about 79 years of age. For months he had been in poor health, and for several years had been nearly blind, not being able to read or count money. Therefore in going about the city, and in conducting his business, he relied upon relatives and friends for assistance. It was his custom to keep all notes and mortgages, together with the abstracts of title to the mortgaged property, in tin boxes which were usually deposited in

the First National Bank and in the American National Bank of his city. In company with Mrs. Jones, or some other person, he would occasionally take a box of papers from the bank for business purposes. Interest on the note in controversy was paid annually for three years and indorsed thereon at the bank.

Defendant John H. Dozier is a wheat raiser of Umatilla County. When a demand was made upon him for payment of the note, he stated and testified upon the trial that he paid the same to Madison Jones at the latter's home late in September, 1910; that Mrs. Sarah F. Jones, on account of her husband's poor eyesight, counted the money, and at the direction of Mr. Jones delivered the note, mortgage, and abstract of title to him; that there was a younger lady, who appears to have been Mrs. Peartree, daughter of Mrs. Jones, about the house at the time, but that she was not present when the money was paid; that Mr. Jones wanted a written description of the mortgaged land in order to cancel the right mortgage of record, as he had several; and that he (the defendant) left the mortgage with Jones for such purpose, with directions to either destroy the same or send it to him after "he had taken it off the records"; but that the mortgage was never sent to him. Dozier further stated that he borrowed $1,600 of the money from Gustave La Fontaine, a well-known business man of Pendleton, at his restaurant, and rode with Neil Dozier to the Jones residence; that Neil Dozier waited outside for him while he went into the house and paid the money; that when he came out with the note and abstract, he tore the names from the note in the presence of Neil Dozier. In this latter testimony, Dozier is corroborated by the evidence of La Fontaine and Neil Dozier. Defendant Dozier also stated that he saw Jones in regard to the matter two or three times during September. The

note in the condition described and the abstract of title were introduced in evidence by Dozier.

It appears that Mrs. Jones was the sister of Madison Jones' first wife; that they had been married about three years; that soon after the time the payment is claimed to have been made, Mrs. Jones commenced a divorce suit, asking for one-third of her husband's real and personal property, which was valued at $60,000; that she settled with him for $550, and abandoned the case; that they separated; and that on October 9th of that year she and her daughter, Mrs. Peartree, went to Los Angeles, California, where they have since resided. Mrs. Jones, who was 68 years of age, testified that the only time she saw Dozier at the home of Madison Jones during that ·fall was on September 25, 1910, when he talked with her husband about the money, but did not pay him; that the note and abstract were not delivered to the defendant Dozier; and that he (Dozier) went away saying that he would return in a few days and see about the matter; but that he never came back while she was there. She further stated that the note was always kept at the First National Bank in a box with the mortgage; that it was never taken out except when the interest was paid, at which time Mr. Lambirth of the bank always indorsed the payment on the note; that for two or three years, when either money was paid or a check given to Mr. Jones at the house, she would always count or examine the same, and they would take it to the bank as soon as possible. On cross-examination she testified, in answer to the following questions, thus:

"Q. You say Mr. Jones never kept or never had a box at his house?

"A. No, sir; he kept his boxes in the bank.

"Q. Did he ever have them at the house temporarily— at the house for a short time?

"A. Once in a great while; there was one time, I believe, he had one brought up for something; I don't remember what it was.

"Q. You do remember one occasion?

"A. I think one time he brought one of the boxes up or something, but I can't remember; I can't remember like I could when I was young."

1. The plaintiff, who is a son of Madison Jones, deceased, testified that when his father went to Portland for eye treatment, November 24, 1910, he instructed plaintiff to go to the bank, get the note in dispute, and collect it; but that the note could not be found. Mrs. Worth Childreth, a witness for plaintiff, testified that she was a near neighbor and acquaintance of Mr. Jones; that after the latter returned from Portland he told her of the loss of the note and said that it was a mystery; and that four or five days before he died he requested her not to repeat what he had told her in regard to the note. Section 732, L. O. L., subd. 2, provides:

"* * That when a party to an action, suit, or proceeding by or against an executor or administrator appears as a witness in his own behalf, or offers evidence of statements made by deceased against the interest of the deceased, statements of the deceased concerning the same subject-matter in his own favor may also be proven."

2. Giving to the statements of decedent all the weight to which they are entitled under the statute, we think that the preponderance of the evidence shows the note to have been paid by the defendant Dozier. It does not appear that he had any opportunity to obtain the note except by payment of the same. His testimony is unshaken by cross-examination, and is corroborated by the circumstances, and, in part, by other witnesses.

3. His possession of the note and abstract, under the conditions shown, raises a strong presumption that the debt had been liquidated (Section 799, subds. 9, 11, L. O. L.), and this presumption is not overcome by the evidence of plaintiff. It is not incumbent upon this defendant to show what became of the money after it

was paid to Jones, who had many transactions of the kind, was in failing health, and soon ceased to transact any business whatever. Mrs. Jones shows that her memory was not then as good as it formerly was. The evidence is conflicting.

4. The circuit court, having seen and heard the witnesses testify, could better test the latter's ability to remember and relate facts, and determine the preponderance of the evidence, than a court can from an examination of the record. Findings made by the trial court, under such circumstances, will rarely be disturbed. *Lovejoy* v. *Chapman*, 23 Or. 571, 575 (32 Pac. 687) ; *Bruce* v. *Phoenix Ins. Co.*, 24 Or. 486, 492 (34 Pac. 16).

It follows that the decree of the lower court should be affirmed, and it is so ordered.                AFFIRMED.