Argued October 28, affirmed December 7, 1915.

## GOFF v. KELSEY.*

(153 Pac. 103.)

**Specific Performance—Oral Contract—Weight and Sufficiency of Evidence.**

1. In an action for the specific performance of an alleged oral contract for the sale of land, the terms of the agreement must be shown by full, complete and satisfactory proof; but proof beyond a reasonable doubt is not required.

*On sufficiency of possession alone as ground for granting specific performance of parol gift of or contract to convey real property, see note in 8 L. R. A. (N. S.) 870.          REPORTER.

**Frauds, Statute of—Interest in Land—Relationship.**

2.   Under an oral contract to sell an interest in land to a son-in-law, proof of his possession under such contract was not enough, of itself, to avoid the statute of frauds as between relatives.

**Specific Performance — Contracts Enforceable — Possession and Improvement.**

3.   In such case, where the son-in-law took possession of the premises with the intention of carrying out the contract, and, because of the contract, made valuable permanent improvements, a court of equity would be warranted in enforcing the contract.

   [As to what amount to contracts for the sale of land within the statute of frauds, see note in 102 Am. St. Rep. 230.]

**Evidence—Declarations Against Interest—Statute.**

4.   In an action for the specific performance of an alleged oral contract to convey land brought against the vendor's executrix, declarations of the deceased vendor against his interest were admissible under the express provisions of Section 710 and Section 727, subdivision 4, L. O. L.

**Evidence—Self-serving Declarations—Statute—"Party."**

5.   Under Section 732, subdivision 2, L. O. L., providing that when a party to action by or against an executor or administrator offers declarations by the deceased against his interest, declarations of the deceased as to the same subject matter in his own favor may also be shown, an executrix of an alleged vendor who, in an action for specific performance of an oral contract to convey, was impleaded as a party defendant, and who by Section 1185, L. O. L., was entitled to the possession of the property and the rents and profits during administration, or until the property was surrendered to the heirs or devisees, and whose right to possession was not terminated by completion of administration within Section 1304, and who had released her claims or surrendered to the heirs and devisees within Section 1305, was a "party," so that where plaintiff put in decedent's declarations against interest, decedent's self-serving declarations were admissible.

**Executors and Administrators—Realty—Right of Possession.**

6.   While the condition of an estate may be such as not to require an executrix to take possession of the real property, her right to possession continues until foreclosed by a settlement of the estate, or otherwise terminated.

**Specific Performance—Sufficiency of Evidence—Oral Contract.**

7.   Evidence, in an action for specific performance of a contract to sell an interest in land when an irrigation ditch was completed, and to credit plaintiff with any money advanced or any work done on the construction of the ditch, *held* not to clearly establish the terms of the contract, or that plaintiff's possession and work was referable to any contract for the sale of the land.

**Appeal and Error—Question of Fact—Findings—Conclusiveness.**

8.   While the findings of the circuit judge are not binding on the appeal of a suit in equity, they are not without weight, especially when the evidence in the record is conflicting.

From Union: JOHN W. KNOWLES, Judge.

In Banc.   Statement by MR. JUSTICE HARRIS.

The plaintiffs, Lane Goff and Laura Goff, are endeavoring to enforce an oral contract, which they claim was made with L. S. Kelsey, for the conveyance of an undivided one-fourth interest in 1,160 acres of land in Union County.   L. S. Kelsey died on May 15, 1913, before the commencement of this suit.   Laura Goff is the wife of Lane Goff and a daughter of L. S. Kelsey. The persons made defendants are Grace Kelsey, as the widow of L. S. Kelsey, and also as the executrix of his estate, six daughters of the deceased, who are Lettie Wilson, Violet Parker, Edna Moore, Maude Hutchinson, Nellie Hutchinson and Ethel Foresstrom, with their respective husbands, and two grandchildren, Earl Wilson and Eva Wilson.

In substance the complaint alleges that in the winter of 1910 and 1911 L. S. Kelsey orally agreed to construct an irrigation ditch from the North Powder River, a distance of about 17 miles to the 1,160 acres, and that when the ditch was completed he would sell to Lane Goff an undivided one fourth of the land; also to Charles E. Hutchinson, the husband of Maude Hutchinson, to W. H. Hutchinson, the husband of Nellie Hutchinson, and to Luther Moore, the husband of Edna Moore, each an undivided one fourth; and that the agreed price was $16 per acre, one fourth of which was to be paid down, with the privilege of paying the balance at any time within 10 years, with the further understanding that any money advanced for and any work done on the construction of the ditch by Goff would be credited as payment on the purchase price.   The pleading relates that in 1911, 1912 and 1913, rights of way were acquired, the ditch was sur-

veyed and constructed to the land in dispute; that the work done by Lane Goff was reasonably worth $2,000; and that he constructed lateral ditches on the 1,160 acres. The complaint explains that Luther Moore declined to carry out his part of the agreement, and for that reason L. S. Kelsey agreed to convey an undivided one half to Charles E. Hutchinson. The plaintiffs continue their version of the controversy by averring that Lane Goff partly performed the contract, not only by work on the main ditch, but also by taking possession of an undivided one fourth of the 1,160 acres, and constructing permanent lateral ditches in 1911 and 1912 over every part of the premises that could be covered, breaking and reducing the land to cultivation and repairing a dwelling-house and barn located on the property. The initial pleading relates that L. S. Kelsey, acting for the plaintiff Lane Goff and the defendants Charles E. Hutchinson and W. H. Hutchinson, rented the entire tract of 1,160 acres to other persons for the season of 1913, with the understanding that plaintiff was to receive one fourth of the rental. Grace Kelsey and the daughters Maude Hutchinson, Nellie Hutchinson, Edna Moore and Ethel Foresstrom, with their respective husbands, answered and denied that L. S. Kelsey made any agreement to sell to Lane Goff or that the latter took possession of the premises under any contract to purchase, or that he made any permanent improvements. The answering defendants allege that Goff entered upon a part of the land pursuant to an oral agreement of lease made in 1911, and his tenancy continued until the fall of 1912, when "L. S. Kelsey took back the land, and plaintiff Lane Goff then and there voluntarily gave it up." The decree of the Circuit Court was for the defendants, and the plaintiffs appealed.                    AFFIRMED.

For appellants there was a brief with oral arguments by *Messrs. Crawford & Eakin.*

For respondents there was a brief with oral arguments by *Mr. William H. Strayer* and *Mr. Charles H. Finn.*

MR. JUSTICE HARRIS delivered the opinion of the court.

The pivotal points of difference between the contesting parties to this litigation are: (1) Whether L. S. Kelsey agreed to sell to Lane Goff; and (2) whether Goff's occupancy of a part of the land and the work done by him on the premises and on the ditch were sufficient to authorize the enforcement of an oral agreement. If L. S. Kelsey did not agree to sell to Goff, then it will not be necessary to discuss any other question; but, even if an agreement was made, it will not avail plaintiffs, unless the bar raised by the statute of frauds has been removed by the acts of Goff in using and working on the premises.

1. Well-established rules fix the measure of evidence which must be furnished before the plaintiffs can successfully claim that they have proved an oral contract for the sale of land. The terms of the agreement must be shown by full, complete and satisfactory proof, and "the certainty of such a contract must be established by evidence sufficient to satisfy a court of equity of the truth of the allegations of the complaint," but proof beyond a reasonable doubt is not required: *Wagonblast* v. *Whitney,* 12 Or. 83 (6 Pac. 399); *Sprague* v. *Jessup,* 48 Or. 211 (83 Pac. 145, 84 Pac. 802, 4 L. R. A. (N. S.) 410); *West* v. *Washington Ry. Co.,* 49 Or. 436 (90 Pac. 666).

2, 3. Laura Goff is a daughter and Lane Goff is a son-in-law of the deceased, and for that reason proof of possession under the alleged oral contract, although it may be sufficient when the contracting parties are strangers, is not enough of itself to avoid the statute of frauds as between relatives; but, if the plaintiffs show, as they claim here, that Lane Goff took possession of the premises with the intention of carrying out the oral agreement and, because of having entered into the agreement, made valuable permanent improvements, then a court of equity would be warranted in enforcing the contract: *Barrett* v. *Schleich,* 37 Or. 613 (62 Pac. 792); *Pugh* v. *Spicknall,* 43 Or. 489 (73 Pac. 1020, 74 Pac. 485); *Zeuske* v. *Zeuske,* 62 Or. 46 (124 Pac. 203); *Thayer* v. *Thayer,* 69 Or. 140 (138 Pac. 478); *Stalker* v. *Stalker, ante,* p. 291 (153 Pac. 52).

4. The court received evidence of declarations made by L. S. Kelsey against his interest in respect to the real property, and evidence of that character was clearly competent: Sections 710 and 727, subd. 4, L. O. L.; *Stalker* v. *Stalker, ante,* p. 291.

5, 6. There is a class of self-serving declarations which becomes competent as evidence when brought within the scope of Section 732, subdivision 2, L. O. L., where we read:

"That when a party to an action, suit, or proceeding by or against an executor or administrator appears as a witness in his own behalf, or offers evidence of statements made by deceased against the interest of the deceased, statements of the deceased concerning the same subject matter in his own favor may also be proven."

The defendants introduced evidence showing that the deceased also made statements in his own favor concerning his disposition of the land; and the plain-

tiffs contend that this character of evidence is incompetent because Grace Kelsey, as executrix, was not a proper party. Numerous witnesses testify that they had heard Kelsey declare that he had sold an undivided one-fourth interest to Lane Goff; and so, too, witnesses told of having heard Kelsey say that he had rented the land to Goff, and that the deceased had complained because Goff had not paid any rent. Nellie Hutchinson testified that her father told her that Goff had not purchased any land ''and that he (Kelsey) was not going to rent it to him (Goff) any more because he had not farmed it right, and he was ruining the ground.''

At the trial the plaintiffs did not even suggest the objection they now make. The evidence was admissible, however. Grace Kelsey, in her representative capacity as executrix of the estate, is a party defendant and was made such by the plaintiffs themselves when they filed their initial pleading; and, moreover, there is nothing to indicate that she is not a proper party. The executrix is entitled to the possession of the property and to receive the rents and profits until the administration is completed or the property is surrendered to the heirs or devisees: Section 1185, L. O. L. The complaint alleges that Grace Kelsey as executrix ''is now administering said estate under the terms of said last will and testament,'' and consequently the right of the executrix to take possession has not been terminated by the completion of the administration of the estate: Section 1304, L. O. L. The record does not contain any suggestion that the land has been released from any claim of the executrix or surrendered to the heirs and devisees pursuant to Section 1305, L. O. L. It is true that the condition of the estate may be such as not to require the executrix to take possession of the real property, but the right of possession continues

until it is foreclosed by a settlement of the estate or is otherwise terminated: *Clark* v. *Bundy,* 29 Or. 190 (44 Pac. 282). It is fair to assume that the plaintiffs believed that the executrix was either a necessary or a proper party, or it may be that they wished to invoke Section 1269, L. O. L., which provides:

"If any deceased person was at the time of his death a party to a bond for a deed or other enforceable contract requiring said deceased to convey real estate, the interest and title of said deceased may be conveyed by his executor or administrator, upon full compliance with the terms and conditions of such bond or contract by the other party thereto, and a deed so made shall transfer the same title as though made by such deceased if living."

The plaintiffs are the parties who impleaded the executrix; and, furthermore, a situation is presented where the legal representative of the estate has either taken possession of the land in controversy, or, if she had not already done so, the executrix may yet attempt to enter into possession of the real estate, and therefore Grace Kelsey in her representative capacity is a proper party defendant. Since this is a suit against an executrix within the meaning of the statute and the plaintiffs not only appeared as witnesses in their own behalf, but also offered evidence of statements made by L. S. Kelsey against the interest of deceased and his successors, it follows that "statements of the deceased concerning the same subject matter in his own favor may be proven": Section 732, subd. 2, L. O. L.; *Jones* v. *Hill,* 62 Or. 53 (124 Pac. 206); *Beard* v. *Beard,* 66 Or. 526 (133 Pac. 795).

7. Having stated the rules pertinent to the issues involved, we shall briefly consider the recitals appearing in the record. The entire tract of land was arid, and

for that reason was of but little value unless made irrigable. Kelsey commenced the construction of an irrigation ditch some time in 1910, and it was not completely finished until after his death, which occurred on May 15, 1913, although water was obtainable from and after 1911. In December, 1911, Charles E. Hutchinson orally agreed to purchase an undivided one-half interest in the land, and at that time paid his father-in-law $3,000; and on October 5, 1912, the agreement was reduced to writing. In June, 1912, L. S. Kelsey verbally contracted to sell an undivided one fourth to his daughter, Nellie Hutchinson, who made a part payment of $250; but at some time in the fall of 1912 they rescinded the agreement. Goff farmed about 93 acres of the premises in 1911 and 1912, and during those two seasons the remainder of the land which was cultivated was cropped by renters. In 1911 Goff harvested 845 bushels of grain, and in 1912 he raised 600 sacks of oats and wheat. A man who was working for Goff lived on the 93 acres mentioned, while the plaintiffs at all times resided on a farm about three miles from the property in dispute. After the crops were removed in 1912 Goff quit the premises and then all the land was rented by Kelsey and Charles E. Hutchinson to Jensen and Newman, who cropped about 500 acres in the season of 1913.

The plaintiffs claim that Kelsey orally agreed to sell to Lane Goff an undivided one fourth of the 1,160 acres, to be divided when the "ditch was dug," for $16 per acre, payable at any time within 10 years, with the further understanding that any work done by Goff on the ditch would be credited on the purchase price of the land. Lane Goff contends that he took possession of the 93 acres and farmed that much land in 1911 and 1912, with the intention of carrying out the oral

agreement relied upon; and while he admits that he relinquished possession after the crop season of 1912, he nevertheless claims that the premises were leased to others for the year 1913, pursuant to an understanding with Kelsey that the latter might rent the property for the use and benefit of Goff, and that therefore the tenancy of Jensen and Newman redounded to the benefit of the plaintiffs. The Goffs also insist that the construction of the laterals on the land, work on the main ditch, and repairs to the house and barn furnished the necessary element of permanent improvements. The answering defendants deny that Kelsey ever agreed to sell to Goff, and assert that, even though there was an oral agreement to sell, the plaintiffs are remediless, because Goff occupied the land as a tenant, and not as a contracting purchaser. The evidence establishes the fact that Kelsey did make an agreement to sell to Goff, and that the terms were in the main as contended by the plaintiffs, although it is doubtful whether all the details, such as the payment of taxes, had been settled. Goff never paid any of the taxes because as he says, "I did not have the title," although the written contract with Charles E. Hutchinson specifically provides that the purchaser shall "pay and keep paid all of the taxes on the lands hereby sold during the continuance of this contract of sale."

The repairs to the house and barn were comparatively trifling, and only such as were necessary to make the buildings habitable. It is true that Goff performed work on the main ditch, and that he claims that this work was done because of his contract to buy, while the adverse parties contend that Goff was working for Kelsey the same as other employees.

The recitals are so widely divergent and the evidence so largely consists of positive affirmations in

behalf of one set of litigants, followed by equally emphatic denials for the opposing parties, that any attempt to reconcile the conflicting testimony would be like trying to transform a rainbow into an arc of a single hue. No useful purpose would be served by an extended recitation and discussion of the testimony, but we do note, in passing, that Kelsey leased all the land to other parties after the crops were harvested in 1912, and Goff was not consulted concerning any of the features of the agreement with the tenants Jensen and Newman; that after Goff quit the premises in 1912, he did not assert any claim to an interest in either the land or the crops until after the death of L. S. Kelsey; that when Charles E. Hutchinson had a settlement with Kelsey after the harvest of 1912, the latter accounted to the former on the basis of having received as rental one third of the crop raised by Goff; that Mrs. Violet Parker, who is prosecuting a suit against these same answering defendants and presumably is not in harmony with them, as a witness for plaintiffs, on cross-examination and without objection being made by the plaintiffs, testified that in "the spring that he was killed" she heard her father speak "of renting Mr. Goff's part in order to give the renter a better advantage and get a better renter"; that, when explaining his failure to return seed wheat furnished by Kelsey in 1911 and sown by the plaintiff on the 93 acres, Lane·Goff stated:

"The next fall after harvest I went to Mr. Kelsey and asked him if he wanted me to return that wheat or pay him for it. He says, 'Never mind about the wheat. We have failed on the crop; we haven't made anything, and I don't want you to pay anything until we make something.' "

The plaintiffs have failed to establish that their possession, or any work done by them, was referable to any contract for the sale of land, even if it be assumed that they have proved all the terms of such contract: *Wagonblast* v. *Whitney,* 12 Or. 83 (6 Pac. 399). We also call attention to the fact that the trial court found "from the testimony that at one time there was some sort of oral agreement between plaintiff Lane Goff and said L. S. Kelsey, during his lifetime, for the purchase of an interest in said lands, but in which the wife of said L. S. Kelsey did not join, but that said plaintiff Lane Goff did not enter into possession of said land or interest therein under said agreement, if any, that he was upon said lands in 1911, but only as a tenant, and whatever contract there was he abandoned and was rescinded by the parties; that plaintiff permitted L. S. Kelsey and Charles E. Hutchinson to rent the lands to another in 1913, and did not assert any right to any part of said land until after the death of said L. S. Kelsey."

8. The trial court had the benefit of a kind of evidence which a mere paper recital cannot possibly preserve; he saw the witnesses, heard them testify, and observed them while they were testifying. While the findings made by the circuit judge are not binding on the appeal of a suit in equity, still they are by no means without weight, especially when a record is presented like the one here: *Jones* v. *Hill,* 62 Or. 53 (124 Pac. 206).

The decree of the Circuit Court is affirmed.

AFFIRMED.

MR. JUSTICE EAKIN did not sit.