Argued February 11, modified February 29, 1916.

# LOGAN v. PARSON.

(155 Pac. 365.)

**Sales—Fraud—Misrepresentations—Sufficiency of Evidence.**

1. In suit by automobile buyers to cancel the note given for the car and to recover the money paid, evidence *held* insufficient to show that the seller of the car made any false representations as to its condition as alleged.

[As to *caveat emptor* in sales of personal property, see note in 102 Am. St. Rep. 607.]

**Partnership—Liability on Note—Partner not a Signatory.**

2. A member of a firm which bought an automobile, who did not sign the note given by his partner for part of the price, was not liable on the note, the signing partner being alone liable thereon.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 2.    Statement by MR. JUSTICE HARRIS.

H. B. Parson and A. M. H. Parson are husband and wife. It is admitted by the pleadings that John C. Logan and William Brown "have been and now are partners doing business under the firm name and style of Logan & Brown." A. M. H. Parson owned an automobile which the plaintiffs agreed to purchase for $1,200. On September 9, 1913, the plaintiffs paid $150 in cash, Brown gave his note for $50, payable to A. M. H. Parson, and Logan & Brown signed a contract note for $1,000, the balance of the purchase price. The contract note obligated the makers to pay to A. M. H. Parson the sum of $1,000, payable in monthly installments of $55, the first installment to be paid on October 9, 1913; A. M. H. Parson is bound to "sell, transfer and deliver" the automobile to the plaintiffs upon the payment of the amount stated in the note; after reciting that the "property has been intrusted to the care of" the plaintiffs, it is stipulated "that said property so intrusted is the property of" A. M. H. Parson until the

note is fully paid, Logan & Brown agreeing to keep the car in good repair and to keep the property insured for not less than $800; and the instrument further provides that in case of default in any installment, A. M. H. Parson shall have the option to ''receive back such personal property'' or to ''insist upon the payment of the full sum * * and to decline to receive back said personal property, in which event the'' signers are to be liable for the full sum agreed to be paid. On September 16, 1913, A. M. H. Parson indorsed the $1,000 note to the defendant Charles R. Frazier to be applied on the price of an automobile purchased from Frazier. About October 10th, Logan paid to Frazier an installment of $55 on the note. Claiming that the transaction had been effected by means of fraudulent representations made by H. B. Parson, who conducted the negotiations for A. M. H. Parson, the plaintiffs commenced this suit on November 15, 1913, for the purpose of canceling the $1,000 note and recovering the money paid. The complaint alleges that:

H. B. Parson ''represented to said plaintiffs that the engines, motors and cylinders were in perfect repair; that they were the same engines, motors, and cylinders belonging to and being a part of said car at the time said car was sent from the factory. That said car had not been used very much, and had not been run more than 2,000 miles and had not been mistreated or misused. That he was a finished mechanic and an expert automobile man, and therefore acquainted with the mechanism of all parts of the car, and that he had examined, cared for, and was thoroughly acquainted with the machinery and tires and axles and wheels and all parts of said car, and that he had always oiled, examined, and cared for this car himself, and could therefore, and did guarantee and represent to said plaintiffs that said automobile had been and now was in perfect order and good workable condition in every part and as a whole.''

The plaintiffs also allege that they "do not believe that said defendant Charles R. Frazier ever paid any valuable consideration for said contract," and the complaint proceeds to allege that the transfer of the $1,000 note to Frazier was only a pretense and was made for the purpose of having Frazier enforce the collection of the amount of the note in the guise of an innocent purchaser. Frazier answered by denying the charge of fraud against him, and he affirmatively alleged that he was an innocent purchaser for value, and that before receiving the note he took the precaution of first seeing Logan, who said that the note was all right "and would be paid in accordance with the terms thereof." After alleging ownership of the instrument and failure to make the stipulated payments Frazier asks for a judgment for the balance due on the $1,000 note.

The answer filed by H. B. Parson and A. M. H. Parson denies the accusations of fraud, alleges that A. M. H. Parson owns the $50 note signed by Brown, and asks for a judgment for the amount of that note. The Circuit Court found:

That Frazier was a purchaser of the $1,000 note "in due course, for a valuable consideration, and without notice of any infirmity therein"; and that "neither the defendant A. M. H. Parson or H. B. Parson, acting as her agent or otherwise, made any false or fraudulent representations to plaintiffs, or either of them, for the purpose of inducing them to purchase said automobile."

The trial resulted in a judgment in favor of Charles R. Frazier for the balance due on the $1,000 note, and a judgment in favor of A. M. H. Parson against the plaintiffs for the amount due on the $50 note which had been signed by Brown alone. The plaintiffs appeal.

MODIFIED.

For appellants there was a brief and an oral argument by *Mr. McCants Stewart.*

For respondent, Charles R. Frazier, there was a brief and an oral argument by *Mr. John H. Hall.*

For respondents, A. M. H. Parson and H. B. Parson, there was a brief by *Mr. Ben C. Dey.*

Mr. Justice Harris delivered the opinion of the court.

The $1,000 note was received by the defendant Frazier on the purchase price of a Cadillac automobile which he had sold to Parson. The transaction was genuine, and there is no evidence to sustain the charge made in the complaint that the transfer of the note to Frazier was a pretense and made only for the purpose of enabling him to enforce the note as an innocent purchaser.

The remaining question is whether H. B. Parson made false representations as charged in the complaint. There is a sharp and irreconcilable conflict in the testimony of the interested parties as to whether Parson made the statements ascribed to him. The trial court found that Parson did not make any false representations, and that finding is not without weight, especially where the testimony of the litigants is difficult to reconcile. The circuit judge saw the witnesses, heard them testify, observed their appearance and manner of testifying, and on that account had the advantage of a species of evidence which is ofttimes of much weight and can never be preserved by a mere paper recital of questions and answers: *Goff·* v. *Kelsey,* 78 Or. 337 (153 Pac. 103).

1, 2. The evidence shows that the automobile, which was sold to plaintiffs, was a Peerless touring car of the 1907 model. Parson bought the car in the latter part of July, 1913, from W. W. Metzger, who had acquired the automobile in the fall of 1912. Metzger testified that the car was in good condition when he bought it, and that "it was in good condition for a second-hand car" when he sold it to Parson. Commencing with August 22, 1913, Parson used the automobile for hire on the streets of Portland. Parson employed Brown as a chauffeur, and the latter drove the car as an employee of Parson from August 22, 1913, until September 9, 1913, when Brown commenced to operate the machine for hire on the streets of Portland for the partnership of Logan & Brown. The evidence warrants the conclusion that the automobile was, as stated by Metzger, in good condition for a second-hand car when it was delivered to Parson. Brown was an experienced chauffeur, and had been driving automobiles "off and on for eight years." While not willing to say that he was a mechanic, Brown did admit that he could tell by the sound of a car "whether she is working all right," and that when the plaintiffs "took this car over, the engine was running all right." On the testimony of Brown himself the "engine was running all right" when the plaintiffs agreed to purchase the car. It is a significant fact that Brown had every opportunity to become familiar with the car, and it is fair to conclude that he had a knowledge of its condition, because Brown operated the automobile practically all of nearly every night from August 22d until September 9th, and the fact that Brown admits that the engine was running all right argues much against the claim of plaintiffs that the engine and motors were out of repair

79 Or.—25

and "were patched and made of parts of other and different motors, engines, and cylinders." The evidence shows that about November 15, 1913, when this suit was commenced, the car was out of repair, and that it would require an expenditure of more than $250 to put the automobile in good condition. The plaintiffs claim that the machinery was out of repair on September 9th, and the defendants contend that the damaged condition of the car is to be traced to a collision. An axle broke on September 13th, but with that exception only minor repairs were necessary until September 22d, when the police patrol collided with the automobile and seriously damaged it. The plaintiffs contend that the collision did not affect the machinery or interior parts, but only damaged such exterior parts as the bumper, fender and lamp. The fact remains, however, that the car could not be moved by its own power, and it was "towed in" by another automobile. No good purpose can be served by discussing the details of the evidence, but it is sufficient to say that the record shows that the automobile was in good condition for a second-hand car when Metzger sold it to Parson; Brown admitted that the engine was running all right up until September 9th; Logan paid an installment of $55 to Frazier on October 10th, and Frazier testified that Logan made no complaint about the car until October 25th, when the latter said: "I can't go any farther, the machine is not making any money and I can't pay it. * * I want to get rid of the machine." No particular objection was made by either one of the plaintiffs until after the collision with the police patrol on September 22d, when the car was so materially damaged that it will be necessary to expend about $250 to put the car in good running condition. The plaintiffs wish to return the car to Parson without repairing it, claim-

ing that the present condition of the interior parts is traceable to defects which existed on September 9th. The defendants contend that the collision was the cause of the damage to the machinery, and in our opinion it is fair to conclude from a careful examination of the whole record that the damaged condition of the car is largely, if not entirely, due to the collision. The plaintiffs have failed to prove that Parson made any false representations as alleged in the complaint, and therefore they are not entitled to a decree annulling the transaction. The trial court rendered a judgment on the $50 note against both plaintiffs. Logan is not liable on the $50 note because he did not sign it, and Brown alone is liable on that note.

The judgment should be corrected so as to relieve Logan from any liability on the $50 note, but in all other respects the judgment is affirmed.    MODIFIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BEAN and MR. JUSTICE BENSON concur.