Argued June 6, affirmed June 26, 1917.

## SHANE v. GORDON.

(165 Pac. 1167.)

**Mortgages—Agreement to Surrender Mortgage and Note—Sufficiency of Evidence.**

1. In suit to cancel a note and mortgage, evidence *held* sufficient to sustain finding that defendant agreed to surrender the note and mortgage.

From Washington: GEORGE R. BAGLEY, Judge.

Department 1.   Statement by MR. JUSTICE HARRIS.

This is a suit to cancel a note and mortgage.   J. D. Gordon owned 16 acres of land in Yamhill County; and on May 20, 1912, he agreed in writing to sell the premises to John G. Shane, F. A. Shane and M. Z. Shane for $5,028.   The contract recites that $1,000 was paid at the time of the execution of the writing, and that the remainder of the purchase price was payable on or before three years after May 20, 1912, with interest at the rate of 6 per cent per annum. No cash was paid to Gordon, but on the day of the execution of the contract John G Shane and Johanna C. Shane gave their note for $1,000, payable on or before three years after date, with interest at 6 per cent per annum, to the order of J. D. Gordon.   The note was secured by a mortgage executed by Johanna C. Shane on 79 acres of land owned by her in Washington County.   Johanna C. Shane was not interested in the Yamhill County land and she only signed the note and gave the mortgage to accommodate her brother John G. Shane and her sisters F. A. Shane and M. Z. Shane.   John G. Shane and M. Z. Shane took possession of the Yamhill County land soon after May 20, 1912, and resided there until about June 1, 1914, when they vacated the premises.

The Shanes paid all the interest due on May 20, 1913, amounting to $301.68, and on May 20, 1914, interest on the note, amounting to $60, was paid, but no other payments were made. Gordon entered into possession of the property immediately after it was vacated by the Shanes. Within sixty days from June 1, 1914, Gordon exchanged the 16 acres in Yamhill County for land in Lane County. Gordon says that the Lane County land was valued at $7,500, but it was encumbered with a $2,500 mortgage; and, therefore, if the valuation placed upon the Lane County land is taken as the standard, the Yamhill County property was worth $5,000 in 1914, as well as in 1912, when the Shanes contracted to purchase.

The plaintiff claims that her brother and sisters vacated the property and relinquished all their rights to it with an agreement on the part of Gordon that he would surrender the note and mortgage whenever he sold or disposed of the property. The defendant denies that he agreed to surrender the note and mortgage. Gordon refused to cancel the note and mortgage and the plaintiff then commenced this suit. The trial court decreed the cancellation of the note and mortgage and the defendant appealed.

                                        AFFIRMED.

For appellant there was a brief over the name of *Messrs. Bronaugh & Bronaugh,* with an oral argument by *Mr. Earl C. Bronaugh.*

For respondent there was a brief and an oral argument by *Mr. William G. Hare.*

MR. JUSTICE HARRIS delivered the opinion of the court.

1. The only question involved in this suit is whether Gordon agreed to surrender the note and mortgage.

The evidence for the defendant contradicts the evidence for the plaintiff, and it is impossible to harmonize the version of one party with that of the other. If the occurrences were as narrated by John G. Shane and one of his sisters, the conclusion is inevitable that Gordon agreed to surrender the note and mortgage; but, on the other hand, the plaintiff must fail if John G. Shane did no more than merely to tell Gordon that

"he had just been to the doctor and the doctor advised him he would have to give up and he was not able to farm any more, and he would have to give up and he said consequently he would have to give up the place, he couldn't work it."

John G. Shane was in Gordon's office on the morning of May 20, 1914. Gordon says that John G. Shane was in the office twice that morning and he is corroborated by a witness who was present on both occasions. Gordon says that John G. Shane did not visit his office again that day, while Shane says that he met Gordon in his office that evening, about 7:30 o'clock, and at that time they agreed that the Shanes would surrender the property and that Gordon would surrender the note and mortgage. If the agreement was made at all it was made in the evening when no persons were present in the office except Gordon and John G. Shane and while a sister of the latter was outside sitting in a buggy. The version of one party cannot be harmonized with the other. The trial judge had the advantage of seeing and hearing the witnesses and he concluded that the preponderance of the evidence was with the plaintiff. S. W. Childers testified that Gordon's reputation for veracity was bad and another witness swore that some people said Gordon's reputation was bad. Eliminating the testimony of Childers, because he was unfriendly to Gordon, and ignoring what was said by

the other witness mentioned, there is nevertheless testimony given by J. D. Crater impeaching the veracity of the defendant. The subsequent conduct of John G. Shane and his sisters rather indicates that they understood, at least, that Gordon had agreed to surrender the note and mortgage. Presumably the land was worth $5,000 because the Shanes agreed to pay that sum for it, and Gordon subsequently traded it for that valuation; and if the land was worth $5,000 it is reasonable to suppose that Shane would have attempted to save all or a part of the note and mortgage rather than make no attempt whatever, especially when he could have compelled Gordon to foreclose the contract. Notwithstanding the fact that Gordon was engaged in the real estate business, he would not give an estimate of the rental value of the land; and it is fair to assume that the interest received by him was in excess of a reasonable rental value. A complete review of all the evidence would serve no good purpose; and it is sufficient to say that the entire record has been carefully examined by more than a single member of this court, with the result that, while the testimony is conflicting, nevertheless following the rule in *Scott* v. *Hubbard,* 67 Or. 498, 505 (136 Pac. 653), we take it as true that the evidence preponderates in favor of the plaintiff, since the trial court found for the plaintiff: *Goff* v. *Kelsey,* 78 Or. 337, 348 (153 Pac. 103). The decree is affirmed.

AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BENSON and MR. JUSTICE BURNETT concur.

MR. JUSTICE McCAMANT took no part in the consideration of this case.