Argued March 14, affirmed April 2, 1918.

## HAMLIN *v.* THARP.

(171 Pac. 894.)

**Fraud—False Representations—Burden of Proof.**

1. In an action to foreclose a purchase-money mortgage, where defendants claimed damages by reason of false representations, the burden is on defendants to prove the false representations.

> [As to burden of proving fairness of transaction, see note in Ann. Cas. 1912A, 704.]

**Fraud—False Representations—Damages—Evidence.**

2. In action to foreclose a purchase-money mortgage, evidence *held* insufficient to show that plaintiff made false representations concerning nature of land.

**Appeal and Error—Reviewing Equity Cases—Findings of Fact.**

3. In action to foreclose purchase-money mortgage, where defendant claimed damages from false representations, weight will be given a finding of the trial court that alleged representations were not made, where the trial judge saw the witnesses testify.

From Coos: JOHN S. COKE, Judge.

Department 1.

The defendants appealed from a decree foreclosing a purchase-money mortgage. In November, 1913, the plaintiff Andrew J. Hamlin sold a 257 acre farm together with certain personal property to the defendants Jeff D. Tharp and his wife Leona Tharp for $9,500. The defendants paid the plaintiff $2,000 in cash, assumed and agreed to pay a note and mortgage held by the State Land Board, and gave their note for $6,846 for the remainder of the purchase price. The note was payable on or before two years after November 29, 1913, its date, with interest, to the order of plaintiff, and was secured by a mortgage on the farm. No payments were made on the note, except the interest due on November 29, 1914. The plaintiff began this suit in February, 1916.

The defendants are attempting to abate the purchase price by claiming that they were damaged to the extent of $6,500 by a fraudulent representation alleged to have been made by the plaintiff. It is averred by the defendants that a stranger to the premises could not by a mere view of the farm easily determine the number of acres of bottom land for the reason that it is broken up by a zigzagging creek and patches of timber and brush are scattered along on both sides of the creek. Bench lands are only worth from $3 to $6 an acre while the bottom lands are valued at from $100 to $200 an acre. The farm embraces 36 acres of bottom land, while the remainder is bench land. The defendants alleged that the plaintiff fraudulently represented to them that the farm included 80 acres of bottom land when in truth it only contained 36 acres of such land.

The plaintiff denied that he made the alleged representation. The trial court found that the plaintiff did not "represent to defendants that said mortgaged ranch contained eighty acres of bottom land."

AFFIRMED.

For appellants there was a brief over the names of *Mr. Claud H. Giles* and *Mr. I. N. Miller,* with an oral argument by *Mr. Giles.*

For respondent there was a brief and an oral argument by *Mr. A. J. Sherwood.*

HARRIS, J.—The defendants are not entitled to a reduction of the amount due upon the face of the note unless the plaintiff made the alleged representation. Hamlin purchased the premises in 1901 for $3,000. He made substantial improvements, including a house, a barn and about five miles of fence.

Four different witnesses testified concerning the worth of the farm and placed its market value at from $9,000 to $11,000. The defendant Jeff D. Tharp had owned and operated several different farms, and had been a dairyman and rancher "twenty or thirty years, somewhere in there." He had, however, been engaged in the real estate business for a period of four or five months immediately preceding the purchase of the Hamlin farm. Jeff D. Tharp was on the premises during one day and over one night before consummating the purchase; and, although it is conceded by all the litigants that the value of such a farm depends upon the number of acres of the bottom land, Tharp nevertheless claims that he bought the place wholly on Hamlin's representation and that he "never went to look at it at all with the idea of seeing whether there was any bottom land, or hill land."

Each of the defendants says that the plaintiff represented that there were 80 acres of bottom land, while the plaintiff denies making such a statement. The plaintiff asserts that he told Jeff D. Tharp "there in the house that I bought it from Emmett for sixty acres, and I didn't know whether there was that much or not." The plaintiff is corroborated by his daughter-in-law Mable Hamlin and by his wife Elba Hamlin. Further corroboration of the plaintiff's version is furnished by L. C. Paull who testified that in the spring of 1914 Tharp told him that "he bought it for sixty acres of bottom land." Jacob Wanley worked for Tharp in the spring of 1915 and this witness stated that he and Tharp were going up the bottom one day, "and I says how much bottom land have you, and he says, sixty acres." In November, 1915, Jeff D. Tharp offered to sell the place to F. A. Meinhardt for $10,000 and "said he had sixty acres"

of bottom land. Jeff D. Tharp says that the first time he ever heard Hamlin say anything about sixty acres occurred about nine months after the sale when Hamlin "visited there" and when he told Hamlin that the latter had represented that the farm contained 80 acres of bottom land Hamlin immediately said, "I bought it for sixty, and I sold it to you for sixty acres," and the witness added "and I believe he was honest in it." The circumstance that Tharp believed that Hamlin honestly claimed that he had not told Tharp that there were 80 acres of bottom land is not without some significance.

1-3. The burden of proof rested upon the defendants to show that the plaintiff made the representation alleged in the answer. The evidence is conflicting. The defendants testify that the plaintiff made the representation; the plaintiff says he did not. Three or four months before the sale to the defendants the plaintiff listed the place with a real estate agency conducted by one Carley and the defendant Jeff D. Tharp. Carley made an entry in a book reading thus: "80 acres of Bottom Finest of land." Hamlin testified that he never saw the book until the trial in July, 1916. This book entry affords one circumstance tending to corroborate the defendants, although it ceases to be a corroborating circumstance if all the testimony given by Hamlin concerning Carley is to be believed. A detailed account of the evidence would not serve any useful purpose. It is sufficient to say that the entire record has been carefully examined and we find a situation where the testimony of the defendants is in irreconcilable conflict with the version of the plaintiff; and while there is some evidence corroborating the defendants there are also circumstances corroborating the plaintiff. After weighing

the mere paper record of the trial the scales appear to us to incline a little towards the version given by the plaintiff; and while not bound by the findings of the trial judge, yet in view of the record presented to us we do accord some weight to his finding that the plaintiff did not make the alleged representation, because the trial judge had the advantage of seeing the witnesses testify: *Goff* v. *Kelsey,* 78 Or. 337, 348 (153 Pac. 103); *Shane* v. *Gordon,* 84 Or. 627, 630 (165 Pac. 1167); *Tucker* v. *Kirkpatrick,* 86 Or. 677 (169 Pac. 117, 118). The defendants contend that they are entitled to a credit of $6,500 on the note because they were damaged by representations made by plaintiff. In its final analysis this is equivalent to saying that for approximately $3,000 paid by them, the defendants claim the right to keep and retain, without making further payments, personal property worth $500 together with a farm valued at from $9,000 to $11,000. The defendants have not made out a case entitling them to acquire nine or eleven thousand dollars' worth of property for $3,000. The evidence warrants us in affirming the judgment and decree of the Circuit Court; and it is so ordered.    AFFIRMED.

McBRIDE, C. J., BENSON and BURNETT, JJ., concur.