Argued November 8; affirmed December 5, 1939

# BENNETT *v.* BRUCHOU ET AL.

(96 P. (2d) 762)

In Banc.

*H. C. Merryman,* of Klamath Falls (Merryman & Napier, of Klamath Falls, on the brief), for appellant.

*A. C. Yaden,* of Klamath Falls, for respondent.

BAILEY, J. The plaintiff, Charles Bennett, in-stituted this suit against Jack Bruchou and others as defendants, to establish and foreclose a mechanic's lien on real property in Klamath Falls, Oregon. All the defendants defaulted except the one named. From a decree in favor of the plaintiff, foreclosing the lien and ordering the property covered thereby sold, the defendant Bruchou prosecutes this appeal.

Early in the month of July, 1931, Bruchou, who was the owner of a tract of land in Klamath Falls on which he was then operating a service station, decided to

demolish the building on the property and erect thereon two structures, one a gasoline service station and the other a tire shop. The new buildings were to be of stone construction. Bruchou had known the plaintiff, Bennett, who was a stone mason, for a number of years, and consulted him regarding the plans for these structures. After deciding upon the plans Bruchou employed Bennett to do masonry work on the two buildings.

The construction of the service station was commenced about July 7, 1931, and was completed on or about August 14 of that year. In November of the same year construction of the tire shop was commenced, but due either to the cold weather or Bruchou's lack of funds work on it was suspended until March, 1932.

At the time Bennett began to perform labor on these buildings it apparently had not been determined between him and Bruchou whether he was to be paid by the day or by the hour. On March 10, 1932, an understanding was had between Bruchou and Bennett to the effect that the latter should receive one dollar an hour for the work which he had already done and for any subsequent labor performed by him on the buildings. The last work done by Bennett on the tire shop was on or about May 10, 1932, and the last work done on it while Bruchou remained owner of the property was on May 14 or 15, 1932. For both the structures the lien claimant furnished the granite which was used over the windows and doors, and some of the stone used elsewhere in the buildings.

The plaintiff did not file his notice of claim of lien until April 12, 1933. In this notice of lien the claim is itemized as follows:

Service station:

| | | | |
|---|---|---|---|
| Labor | $316 | | |
| Materials and transportation of same | 174.75 | | |
| Total | | $490.75 | |
| Credit | | 291.00 | |
| Balance due on service station | | | $199.75 |

Tire shop:

| | | | |
|---|---|---|---|
| Labor | 499.50 | | |
| Materials and transportation of same | 242.50 | | |
| Total | | 742.00 | |
| Credit | | 73.00 | |
| Balance due on tire shop | | 669.00 | |
| Total amount of claim of lien | | $868.75. | |

This suit was instituted by the plaintiff on October 6, 1933, which was within six months after the date on which the lien was filed. Due to various delays the case did not come on for trial until February 8, 1939. The decree of the circuit court awarded the plaintiff a lien against the two buildings and the land on which they are located, in the sum of $669.05, which is $199.70 less than the amount stated in his notice of claim. In addition, the trial court allowed the plaintiff $1.20 for filing and recording the lien notice, also attorney's fee and costs.

Three assignments of error are urged by the appellant, which are specified as (1) the overruling of the demurrer to the complaint; (2) the sustaining of plaintiff's claim of lien; and (3) the rendering of a decree in favor of the plaintiff.

The second and third assignments involve the question of whether the notice of lien was filed within the time limited by the statute. In order to arrive at a proper conclusion as to these assignments it is necessary to go somewhat into the facts of the case.

According to Bennett's testimony, the defendant advised him when he began construction that he wanted the masonry work on both buildings pointed up or pointed off, as the terms seem to be used interchangeably in the testimony. Pointing up is the filling of spaces or joints between stones with mortar, which may be left flush, raked or extended beyond the edges of the stones.

The service station was octagonal, thirty feet in circumference and ten feet, eight inches in height, with canopies on two opposite sides over the gasoline pumps. This entire structure was built of stones of the same color. After they were laid Bennett pointed up the joints, extending a bulge of mortar beyond the edges of the stones.

Construction of both the service station and the tire shop was undertaken as one project. The defendant, however, after completing the service station discovered that his financial condition was such that he could not proceed immediately with the building of the tire shop, and work on it was delayed until November, 1931. The plaintiff, according to his time book, performed seventy-nine hours' labor on that structure

from November 3 to 13, inclusive. At this latter date construction was suspended because of weather conditions, and was resumed in March of the next year.

The tire shop was rectangular in shape, one hundred and seven feet around, with an average height of thirteen feet, and built of varicolored stones of different shapes and sizes. Granite was placed over the windows and doorways and a stone coping was laid around the top of the building. In the masonry work on this structure, in which Bennett was assisted by another stone mason, the stones were laid from one-half to three-quarters of an inch apart, with the joints left open so that they could be pointed up later.

Bennett last performed work on the building, as above stated, about May 10, 1932. He testified that when he stopped work Bruchou told him that he wanted him to complete the building in the fall by pointing up the masonry work, and that Bruchou further postponed this work because of lack of funds. In April of the following year, 1933, Bennett again approached Bruchou, he testified, and told him that he would like to point up the masonry work at that time. Bruchou again told him that he did not have the money to do it then, and then informed Bennett for the first time that he did not want him to do that work. This occurred two or three days before the lien was filed.

The defendant testified that he did not intend at any time to have masonry work on the tire shop pointed up, but that he had not communicated that fact to the plaintiff. He further testified that he did not specifically direct or order the plaintiff to do the pointing-up on the service station, although he knew that Bennett was finishing the masonry in that manner.

After the defendant disposed of the property the masonry work on the tire shop was pointed up, except at the rear of that building. Mr. Ferrari, who ordered the work done, was called as a witness on behalf of the defendant and was asked this question: "Why did you have it pointed?" His answer was: "I figured it needed it by the way it was; I figured it looked better pointed." Mr. Gheller, the mason who assisted in the construction of the tire shop, as a witness on behalf of the defendant, gave this testimony:

"Q. Was it necessary to point it up to complete the building? A. I don't think so.

"Q. Not in your opinion? A. Somebody else might think so.

"Q. It just depends on whether they want it or not, is that it? A. Yes, sir."

In stating the reason why it was necessary to point up the masonry, Mr. Bennett thus testified:

"The reason for pointing off is to prevent dampness coming in, or to prevent snow or rain to penetrate the wall; to point it off the mason fixes it so that it will repel the water, so that the water will not get into it."

The plaintiff called as two of his witnesses J. C. Cleghorn, an experienced civil engineer, and H. R. Perrin, an architect. Both these witnesses testified that they were familiar with masonry work, that they had examined the tire shop and that they did not consider the building completed until the pointing-up was done. Mr. Cleghorn stated that pointing-up was necessary as a protection from rain. Mr. Perrin testified that it was customary to point off masonry work, and added: "You do not lay up stone work and not point it off in some manner."

There was introduced as an exhibit a photograph of the front and one side of the tire shop, taken after the

pointing-up was completed. From an inspection of this exhibit it is apparent that the work involved in pointing up the building was not a minor detail.

Among the findings of the trial court appears this:

"The buildings were not completed on the twelfth day of April, 1933, on which date the plaintiff filed his lien herein on said premises, but the pointing-off on the 'Tire Shop' still remained to be done and such pointing was an essential element of construction and necessary to be done to make the substantial completion thereof."

■■ We are of the opinion that the above finding is in accord with the preponderance of the evidence. In suits in equity, when there is conflicting evidence the findings of the trial court are not without weight: *Jones v. Hill*, 62 Or. 53, 124 P. 206; *Goff v. Kelsey*, 78 Or. 337, 153 P. 103. We are also of the opinion that the defendant Bruchou led the plaintiff to believe that he intended to have the masonry on the tire shop pointed up, that Bennett understood he was to do that work, and that he was not advised to the contrary until two or three days before he filed his notice of claim of lien.

We do not have here a case in which the contractor has for all apparent purposes completed the contract and withdrawn from the work, and later, in order to keep alive or revive his right of lien, returns to the job and performs some inconsequential work that he could have completed at a much earlier date. In this instance the plaintiff was at all times ready and willing to finish what he understood to be a part of the work, and would have completed it if he had not been put off by the defendant.

■ The plaintiff did not enter into a contract with the defendant to furnish material and perform labor in

the erection of either the service station or the tire shop. He had in his possession some granite and stone which, it developed as the work progressed, the defendant desired to buy for use in the buildings. In furnishing this material Bennett was a materialman: § 51-101, Oregon Code 1930; *Heacock Sash & Door Co. v. Weatherford*, 135 Or. 153, 294 P. 344. The plaintiff did not undertake to perform all the labor necessary to complete the construction. He worked on an hourly basis and at any time he could have stopped, or the defendant could have discharged him, without violating any contractual obligation. He was engaged merely to work for an indefinite time, under the direction of the defendant, and was not employed to perform any distinct piece of work. The plaintiff was not, therefore, a contractor or sub-contractor, as these words are commonly understood: Boisot on Mechanics' Liens, § 239; 40 C. J., Mechanics' Liens, §§ 140 and 141; *Bernard v. Hasson*, 60 Or. 62, 118 P. 201. Nor was he an original contractor within the meaning of the mechanics' lien law, §§ 51-101 to 51-113, inclusive, Oregon Code 1930.

██ Inasmuch as he was not an original contractor, Bennett had thirty days after the completion of the building or the permanent abandonment of construction, within which to file his notice of claim of lien: § 51-105, Oregon Code 1930; *Nicolai-Neppach Co. v. Poore*, 120 Or. 163, 251 P. 268; *James A. C. Tait & Company v. Stryker*, 117 Or. 338, 243 P. 104; *Eastern & Western Lumber Company v. Williams*, 129 Or. 1, 276 P. 257. As shown by the facts in the case, the lien was timely filed.

In contending that the demurrer to the complaint should have been sustained the defendant predicates

his argument on the erroneous assumption that the plaintiff was an original contractor. In view of our holding that the plaintiff was not an original contractor further discussion is not necessary.

We are of the opinion that the circuit court committed no error. The decree appealed from is affirmed.

BELT, J., not participating.