**W. H. JONES, Appellant,**

v.

**Raymond JONES, Appellee.**

No. 15596.

United States Court of Appeals
Ninth Circuit.

Dec. 17, 1957.

Rehearing Denied Jan. 27, 1958.

Morley & Thomas, Lebanon, Or., Ernest Lundeen, Eugene, Or., for appellant.

Darling & Vonderheit, Stanley R. Darling, Eugene, Or., Perry W. Morton, Asst. Atty. Gen., C. E. Luckey, U. S. Atty., Portland, Or., for appellee.

Before DENMAN, POPE and HAMLEY, Circuit Judges.

DENMAN, Circuit Judge.

W. H. Jones, hereafter the father, appeals from a decision of the district court awarding to Raymond Jones, hereafter the son, the sum of $4,000.00 paid into court by the United States in a condemnation proceeding for a right of way over 288 acres of Oregon ranch and timber property which the court held was owned by the son, by virtue of an oral promise by the father to give the land to him followed by the son's possession and his making permanent improvements thereon.

■ It is agreed that the Oregon law allows enforcement of an oral promise to convey real property under the above circumstances and that the question is whether the evidence in the case warrants the court's findings supporting the judgment. The first contention is that the finding of the oral promise to convey the land for which the $4,000.00 was paid is not supported by evidence which is plain, clear and convincing, as required by the Oregon decisions. Tiggelbeck v. Russell, 187 Or. 554, 213 P.2d 156; Ward v. Ward, 94 Or. 405, 185 P. 906; Unterkircher v. Unterkircher, 183 Or. 583, 195 P.2d 178.

Apparently the father considers that the evidence is not of such a character if it is conflicting. Here there is abundant, clear and convincing evidence heard by the court from the son, supported by the oral testimony of seven other witnesses. The son, who was living on an 80-acre property above that of the father, testified that shortly after the death of his mother his father said, "You can have the place. You come down here and take possession." This was followed by the statement, "And that's what we did." "We moved in from the upper place to the lower place."

The testimony of the seven supporting witnesses is all like that of one Mrs. Grubbe and her husband who knew the father and talked with him after the death of his wife. She was asked whether she recalled anything about the son's movement to the father's ranch and testified:

"A. Well, he told me—Mr. Jones told me, he says, 'I couldn't stay on the ranch alone nor I couldn't run it,' he says, 'I told Raymond if he would come down I would give him —that I would give him the ranch."

■ There is no merit to the appellant's contention that the promise was not proved by clear and convincing evidence.

■ The father next contends that the son made no substantial improvements on the property in reliance on the oral promise to convey as required by Goff v. Kelsey, 78 Or. 337, at page 342, 153 P. 103, at page 104, which states the law to be that "if the plaintiffs show, as they claim here, that Lane Goff took possession of the premises with the intention of carrying out the oral agreement

and, because of having entered into the agreement, made valuable permanent improvements, then a court of equity would be warranted in enforcing the contract."

Here the testimony of the son is that after he moved on the farm he cleared the land of the liens (a) of a mortgage by paying the balance due thereon, (b) of unpaid taxes originally on personal property and (c) of delinquent taxes directly on the land. He thereafter paid all the taxes thereon for the following fourteen tax years. The house on the Jones farm was built in the year 1939 and the father and his wife lived in the house only one winter prior to her death. Both the father and the son testified that the house had not been completed at the time the son and his family moved in. Mamie Grubbe described the house at that time as "really a shell". Thebe Jones said there was only one faucet in the house. Thebe Jones testified that she and the son spent approximately $2,000 in improvements on the house alone.

The fact that these improvements were in the home in which he resided makes them no less an improvement of the property in reliance on the oral promise to convey than the other structures outside the home. All are for the son's benefit, while making the gift valid. He also constructed a 16' x 18' double garage, rebuilt a 14' x 24' shop building, constructed a 14' x 24' leanto for equipment storage, put in about 100 rods of fence, cut the brush on about 40 acres of pasture land and cut about one-half mile of brush along the creek on two occasions. If we were in doubt about the value of these improvements, the Oregon law is that we should hesitate to set aside the trial court's findings, the Goff opinion, supra, stating, 78 Or. at page 348, 153 P. at page 106:

"The trial court had the benefit of a kind of evidence which a mere paper recital cannot possibly preserve; he saw the witnesses, heard them testify, and observed them while they were testifying. While the findings made by the circuit judge are not binding on the appeal of a suit in equity, still they are by no means without weight, especially when a record is presented like the one here."

The father finally contends that the court erred in not granting a new trial or re-opening the case for further testimony on a showing of affidavits of several persons, some of which stated that the son had admitted that he did not own the property and others of which stated support for the father's claims of ownership.

From the record it appears that on March 5, 1956, the first day of the trial, three witnesses, friends and neighbors, testified to the father's admissions concerning the son's title. It was apparent that this was going to be the basis of the son's claim to the $4,000.00 in controversy. The court then adjourned for 21 days until March 26th during which time the father could have sought similar testimony from his friends and neighbors but instead of so doing he preferred to take his chance on the evidence then heard. The rule in such a situation is that the right to take further testimony or to a new trial because of newly discovered evidence is a matter of the court's discretion, 3 Barron and Holtzoff stating it in Section 1302 of their Federal Practice and Procedure (1950):

"A motion for a new trial invokes the sound discretion of the court. An order granting or denying a new trial is not reviewable except for clear abuse of discretion."

We think there was no abuse of discretion in denying the new trial.

The judgment is affirmed.